LAURA HOLSCHER et al., Respondents, v STATE OF NEW YORK, Appellant. (Claim No. 58920-F.)

Third Department, November 3, 1977

*Louis J. Lefkowitz, Attorney-General (Douglas L. Manley, Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellant.

*Rockwood, Edelstein & Shaw (William W. Owens* of counsel), for respondents.

LARKIN, J. Claimants instituted this suit to obtain compensation for flood damage sustained during September, 1974 to their property at 123 Dale Avenue, Ossining, New York. The property, occupied by claimants since 1957, is bounded on the east by Dale Avenue and on the north by a stream referred to at the trial as Stream No. 1, also known as Kill Brook. Dale Avenue was constructed by the Town of Ossining as a county road and incorporated into the State highway system in 1930, now making up part of Route 134. Stream No. 1 runs from east to west under Dale Avenue through a culvert. This culvert was built by the Town of Ossining at the time of the original construction of the road and added to in 1925. There has been no reconstruction since 1925.

The claimants, which originally had joined several other property owners as claimants, alleged reduction of the natural capacity of a waterway and the diversion of the natural flow of a waterway, construction of an inadequate drainage culvert and failure, after receipt of notice "to repair, properly maintain or correct a defective and dangerous condition or to remove the patent obstruction * * * in and around a natural waterway, believed by claimants to be known as 'Kill Brook' ". The incident which is the subject of the claim is alleged to have occurred between 11:00 P.M. on September 1, 1974 and 2:00 A.M. on September 2, 1974, when a severe rainstorm caused the said stream to flood claimants' property, leaving debris on the premises, removing a 40-foot section of an anchor chain fence, rotting a playroom floor and undermining the base of the retaining wall along the stream bed. The Court of Claims, relying in part upon section 45 of the Highway

Law, found that the appellant State of New York, despite "sufficient notice that the culvert had design limitations, that flooding was likely to occur and that proper maintenance was required", had failed to discharge "a duty to maintain the culvert in such a condition as to sustain its waterload capacity". Claimants were awarded damages for the cost of repairing the damaged property in the sum of $16,150 plus interest.

We conclude that the judgment should be reversed and the claim dismissed. Since this is a claim based upon the appellant's alleged negligence, the claimants had the burden of proving the essential elements thereof, including the existence of a duty owing by the State to the claimants, the State's failure to discharge such duty and injury proximately resulting to claimants from such failure (41 NY Jur, Negligence, § 7). In our view the claimants have failed to meet this burden.

Initially, we find that no duty to the claimants on the part of the State can be premised upon section 45 of the Highway Law. This statute grants to the Commissioner of Transportation or his employees the power to enter upon land adjacent to State highways or adjoining or in the beds of any streams or creeks for the purposes, among other things, of performing construction or maintenance to keep streams or creeks within their channels and of removing obstructions which prevent the free flow of water through State highways, bridges and culverts (Highway Law, § 45, subds 2, 3). We disagree with the finding of the court that this statute, obviously intended to provide the State with a vehicle for protecting its own highways and bridges, can be used to impose an affirmative duty upon the State to perform work for the benefit of riparian landowners. We find no case supporting such a proposition and no logical justification for imposing such a duty on the basis of the language of the statute.

In cases arising from flooding, the duty owing to the claimants by the State has generally been viewed as arising from the construction of the highway and drainage systems (*Cashin v City of New Rochelle,* 256 NY 190; *Bronxville Palmer v State of New York,* 33 AD2d 412; *Carrera v State of New York,* 29 AD2d 577; *Incorporated Vil. of Flower Hill v State of New York,* 7 AD2d 940). In the instant case, in contrast, the State had not constructed the culvert in question, but had only assumed control over it when the State incorporated the former county road into the State highway system. While

there was evidence submitted at the trial that the culvert did not meet the State's present standards, the general rule as to highways is that the State is not required to undertake expensive reconstruction simply because the standards have changed since the time of the original construction *(Kaufman v State of New York,* 27 AD2d 587; *Ruggiero v State of New York,* 256 App Div 437; see, also, *Stuart-Bullock v State of New York,* 38 AD2d 626, affd 33 NY2d 418). A similar rule would apply to the culvert in question.

Having concluded that section 45 of the Highway Law imposed no duty upon the State in favor of claimants and that, as a general rule, the State was not under an obligation to reconstruct the culvert to meet current standards, we must examine whether the State violated a duty to claimants under general negligence standards with respect to the conditions which are the subject of this claim. The Court of Claims, in its finding of negligence, found that the State had notice of the potential problem since 1971 and that the weather conditions which caused the flooding in September, 1974 were not unprecedented. Our standard of review of findings of fact in a nonjury case is "if it appears on all the credible evidence that a finding different from that of the trial court is not unreasonable, this court must weigh the probative force of the conflicting evidence and inferences *(Shipman v. Words of Power Missionary Enterprises,* 54 AD2d 1052)." *(Grow Constr. Co. v State of New York,* 56 AD2d 95, 99.)

In our view, the examples of notice relied upon by the claimants as to the conditions complained of herein—the inadequacy of the State's said culvert and the obstruction thereof—were ambiguous and imprecise. The letters relied upon, as pointed out by appellant, were based more upon the lack of capacity of the stream bed than any deficiencies in the culvert. The primary concern expressed was the need for flood control, preferably by the United States Army Corps of Engineers, to be achieved mainly by digging out or dredging the stream. We find insufficient evidence of notice in claimants' proof. In addition, we disagree with the trial court's conclusion, with the finding of notice implicit therein, that the September, 1974 storm was not unprecedented. This storm was a cloudburst in which approximately 3.3 inches of rain fell between 11:00 P.M. on September 1, 1974 and 2:00 A.M. on September 2, 1974. Vincent R. Bonvissuto, an expert testifying for claimants, stated that it was "a 50 year storm", meaning

that a storm of such intensity would occur statistically only once every 50 years. It appears from the record that the culvert had served its purpose in a satisfactory manner from 1925 to the time of the storm in issue, with the exception of hurricanes occurring in 1968 and 1971. Under these circumstances we cannot find notice sufficient to impose a duty upon the State to require it to reconstruct the culvert as claimants suggest. As to the further claim that the State should have been on notice of possible obstruction of the culvert, we note that a 1974 report offered into evidence by claimants revealed that on July 8, 1974, less than two months prior to the storm which led to this claim, the culvert inlet, the culvert outlet and the culvert interior were all found to be in "Good Condition".

We conclude that the injury sustained by claimants was not the result of a failure by appellant to discharge any duty it owed to them, that the damage which is the subject of the claim was not reasonably foreseeable and that the Court of Claims erred in concluding that the State was negligent.

The judgment should be reversed, on the law and the facts, without costs, and the claim dismissed.

KANE, J. P., MAIN, MIKOLL and HERLIHY, JJ., concur.

Judgment reversed, on the law and the facts, without costs, and claim dismissed.