■ EVERETT S. VAN DE BOGART, JR., Appellant, v STATE OF NEW YORK, Respondent.—Levine, J.—Appeal from a judgment of the Court of Claims (Hanifin, J.), entered March 28, 1985, which dismissed the claim.

Claimant was severely injured in a one-car accident which occurred on Route 357 in the Town of Franklin, Delaware County, at about 5:00 A.M. on October 24, 1981. He was one of three passengers in the vehicle, driven by Robert Rowell en route back from claimant's engagement as a member of a band playing in a local tavern in the Village of Pine Hill, Ulster County, the preceding evening. The car went off the road at a left-hand curve, continued in a path over the recessed headwall of a culvert and struck a tree located some 12 feet from the edge of the road. One of the other passengers was fatally injured in the crash. Rowell testified that he had been awake for some 20 hours before the accident occurred and had consumed a six-pack of beer at the bar where claimant played that night. Although he was familiar with the roadway, he failed to negotiate the curve while his attention

---

was diverted as a result of looking down to adjust the dial of the car radio. Following police investigation of the accident, Rowell was charged with and convicted of driving while intoxicated. There was also evidence that he had admitted to the police momentarily falling asleep when his car left the road.

Route 357 is a rural, lightly traveled road, constructed in 1928 and designated as a class C highway. It consists of two 10-foot paved lanes with shoulders partially paved to a distance of about three feet. The stretch of Route 357 where the accident occurred had been the subject of a resurfacing project completed earlier in 1981. The center and edge lines of the highway had been repainted in the course of the project. At the curve in question, the State had installed traffic control and safety measures consisting of a posted 45 miles per hour reduced speed sign, a curve sign, a left arrow sign at the curve, a diamond-shaped culvert marker and reflectorized delineators. The left arrow sign had been recently added as the result of an investigation made in response to a complaint from an adjoining property owner, following a fatal accident at the curve in June 1981.

Claimant posited the liability of the State on his traffic safety expert's testimony of its negligence in ignoring or failing to recognize and rectify or protect against the hazards of the sharpness and deceptiveness of the curve, the excessive drop-off from the paved to the earthen portion of the shoulder, the recessed headwall of the culvert and the tree in close proximity to the roadway which the vehicle struck. Claimant sought to establish that the State was on notice of these hazards from the analysis of the relevant section of Route 357 done by the Department of Transportation prior to the resurfacing project, the happening of the June 1981 accident, in which a car also left the road and struck a tree in the vicinity of the tree involved in the instant accident, and the investigation thereof following the previously described complaint. Claimant's expert opined that the State should have restructured, rather than merely repaved, the road section in order to eliminate or ameliorate the curve; failing that, a guide rail should have been erected at the curve to shield the culvert, the tree should have been removed, the speed at the curve should have been reduced to 35 miles per hour and chevron signing of the curve rather than a single arrow should have been installed.

From our reading of the record, the weight of the evidence supports the findings of the Court of Claims that the State did

not breach any duty of care which contributed to causing the accident. Although the State may owe a nondelegable duty to the traveling public to construct and maintain its roads in a reasonably safe condition *(see, Weiss v Fote,* 7 NY2d 579, 584; *Cordts v State of New York,* 125 AD2d 746, 748), it is not an insurer of the safety of its roadways *(see, Tomassi v Town of Union,* 46 NY2d 91, 97). In maintaining older highways, the State is not obliged to undertake expensive reconstruction simply because highway safety design standards have changed since the original construction *(see, Holscher v State of New York,* 59 AD2d 224, 227, *affd* 46 NY2d 792). Thus, even though the shape of the road and extent of the "safe recovery area" adjoining it did not comply with current criteria, no major restructuring was required unless the curve could not safely have been negotiated at moderate speed *(see, Kaufman v State of New York,* 27 AD2d 587, 588). The only alleged hazard created by the new construction here was the drop-off between the paved and unpaved portion of the shoulder of the road. However, the record fully supports the Court of Claims acceptance of the State experts' opinion that the approximately one-inch drop-off was within acceptable limits and its rejection of claimant's expert's contrary view, particularly since claimant's expert conceded that he did not measure the extent of the disparity. Likewise, the court properly found that the culvert played no role in causing the vehicle to go out of control or in preventing it from reentering the highway.

The decision not to modify the curve by highway reconstruction and to fix the posted speed at 45 miles per hour was made deliberately after considering a thorough analysis of the accident record of the section of Route 357 involved, the existence of numerous roadside obstacles, the relative costs and fiscal priorities, and appropriate testing establishing the safe speed for negotiating the curve. While claimant's expert disagreed with the conclusion of the State's highway engineers, such judgmental decisions are precisely the kind which are clothed with qualified governmental immunity under *Weiss v Fote (supra,* at 585-586). There has been no showing that the State's deliberative process concerning the resurfacing project was inadequate or that its repaving and resigning plan lacked a reasonable basis *(see, Friedman v State of New York,* 67 NY2d 271, 284).

The foregoing disposes of all of the issues other than that of the adequacy of the State's response to notification of the June 1981 accident at the curve and particularly its failure to remove the tree struck by the vehicle in which claimant was a

passenger. A response was necessary under the State's continuing obligation to review its traffic plan in the light of actual operation and to take remedial action upon awareness of a dangerous highway condition *(see, supra,* at 284, 286). Here, a qualified State safety engineer investigated the scene and the cause of the earlier accident and reviewed the history of accidents within the vicinity of the curve within the previous 40 months, as revealed in the records of reports of personal injury and significant property damage accidents of the Department of Motor Vehicles. The curve was retested for a reduced safe speed limit, which reconfirmed the appropriateness of the posted 45 miles-per-hour speed limit. Based upon the foregoing investigation, testing and review of accident history, the State's engineer concluded that all of the relevant prior accidents were attributable to excessive speed and lack of perception of the sharpness of the curve. He recommended the additional warning of an arrow sign at the approach to the curve, which was installed before the instant accident. Again, it cannot be said that the record dictates the conclusion that the State's study of the dangerousness of the curve was inadequate merely because the State's engineer failed to interview neighboring landowners to ascertain the extent of unreported accidents at the curve or failed to attach the same significance as claimant's expert to the involvement of another tree in the June 1981 accident. As was held in *Friedman v State of New York (supra,* at 285-286): "Appellants would have us examine the criteria that were considered by the State's professional staff, emphasize factors allegedly overlooked, and, with the benefit of hindsight, rule that the studies were inadequate as a matter of law. We decline this invitation, for to do so, as the Appellate Division correctly concluded, 'would constitute the type of judgment substitution that *Weiss v Fote (supra)* prohibits' ".

Nor did the failure to direct removal of the tree near this older, rural highway render the modified traffic plan unreasonable, in view of the conclusions reached as to the causes of the prior accidents *(see, Tomassi v Town of Union, supra,* at 97). It is also noteworthy that the uncontested evidence was that the aggregate warning signing at the curve conformed to the State Manual of Uniform Traffic Control Devices *(cf., Alexander v Eldred,* 63 NY2d 460, 466).

Judgment affirmed, without costs. Mahoney, P. J., Main, Yesawich, Jr., Levine and Harvey, JJ., concur.