884 F.2d 1556
 Grace WILLIS, Plaintiff-Appellee,
v.
WESTIN HOTEL COMPANY, Defendant-Appellant,
and
Westinghouse Electric Corporation, Individually and d/b/a
Millar Elevator Company, and Millar Elevator
Industries, Inc., Defendants-Appellees.
 No. 37, Docket 88-7316.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 14, 1988.
Decided Sept. 11, 1989.
 
 George R. Hinkley, New York City (Michael B. Sena, Hinkley & Silbert, P.C., New York City, of counsel), for defendant-appellant Westin Hotel Co.
 Scott C. Watson, New York City (Stuart J. Manzione, J.M. Furey & R.J. Furey, P.C., New York City, of counsel), for defendant-appellee Millar Elevator Industries, Inc.
 Before LUMBARD and MAHONEY, Circuit Judges, and CHOLAKIS, District Judge.*
 MAHONEY, Circuit Judge:
 
 
 1
 In this diversity action, governed by New York law, defendant-appellant Westin Hotel Company ("Westin") has appealed from a final judgment and second amended final judgment entered after a jury trial in the United States District Court for the Southern District of New York, Constance Baker Motley, Judge, awarding plaintiff-appellee Grace Willis ("Willis") $251,865 jointly and severally against Westin and defendant-appellee Millar Elevator Industries, Inc. ("Millar"), and allocating damages 80% against Westin and 20% against Millar. Westin also appeals from the denial of its motion for judgment notwithstanding the verdict and a new trial.
 
 
 2
 Willis was injured on departing an elevator at the sixteenth floor of the Plaza Hotel (the "Plaza") in Manhattan on September 8, 1984. The elevator was not level with the floor. Westin owned and operated the Plaza, and had contracted with Millar for Millar to service the Plaza's elevators. Willis brought suit initially against Westin (which filed a third-party complaint against Millar), and then against both Westin and Millar. Westin then brought cross-claims against Millar, and Millar against Westin, for indemnification and contribution. Westin also brought an additional contractual cross-claim against Millar.
 
 
 3
 The original final judgment did not address the cross-claims between Westin and Millar, except inferentially by apportionment of the damages payable by each to Willis. The initial amended final judgment dismissed Westin's cross-claim for indemnification against Millar,[1] granted judgment for Westin and Millar on their cross-claims against each other "to the extent of any amount paid in excess of its pro rata share," and declared that it was entered nunc pro tunc as of the date of the original judgment. The second amended final judgment is identical to the initial amended final judgment, except that the nunc pro tunc feature is deleted.
 
 
 4
 Willis advised this court by letter that the judgment in her favor had been paid in full, presumably by Millar, which did not appeal that judgment. Willis accordingly did not participate in this appeal.
 
 
 5
 On appeal, Westin contends that Willis' case against Westin should never have gone to the jury, since only Millar caused Willis' injury. Under New York law, however, Westin's duty to plaintiff to maintain a safe elevator was nondelegable, with the result that vis-a-vis Willis, Westin was responsible for any derelictions by Millar. We nonetheless find that Westin was entitled, as a matter of law, to a favorable judgment on its cross-claim for indemnification against Millar.[2]
 
 
 6
 We accordingly affirm the second amended final judgment insofar as it was in favor of Willis jointly and severally against Westin and Millar and dismissed all claims by and against Westinghouse; reverse its apportionment of the judgment in favor of Willis between Westin and Millar, dismissal of Westin's cross-claim for indemnification against Millar, and grant of Westin and Millar's cross-claims for contribution against each other; and remand for the entry of judgment for Westin on its cross-claim for indemnification against Millar, the dismissal of Westin's contractual cross-claim as moot, and the dismissal of Millar's cross-claim for indemnification against Westin.
 
 Background
 
 7
 Sometime between 7:30 and 8:00 p.m. on September 8, 1984, Willis boarded elevator number eight at the Plaza and was injured while departing from that elevator, which misleveled two inches above the sixteenth floor.
 
 
 8
 At trial, Millar's maintenance supervisor established that the cause of the accident was a malfunction in the elevator's downleveling relay coil. The supervisor also testified that the Millar mechanic stationed at the hotel was required regularly to inspect and examine the leveling equipment. The mechanic stationed at the hotel, however, testified that he did not inspect the leveling equipment so long as the elevator was operating properly. Further, his description of the preventive maintenance procedures which he followed omitted any mention of maintaining useful life records concerning relays and other components of the elevator equipment.
 
 
 9
 Dr. Frederick Ryder, the sole expert in this case, testified for the plaintiff that the accident was caused by a lack of "preventive maintenance," which he defined as including "inspection, maintenance, repair and service that is done in advance of a defect actually occurring with a view to insuring that no defect occurs in the future." Preventive maintenance with respect to relays, including the one that malfunctioned to Willis' detriment, Dr. Ryder explained, entails the maintenance of records showing the useful life of the relays. Such records provide a basis for replacement of relays prior to any normally anticipated failure. Absent such records, Dr. Ryder testified, it is impossible to tell that a relay is, or is in danger of becoming, defective. He added that not keeping records to determine useful life deviates from the accepted standard of care in elevator preventive maintenance.
 
 
 10
 Dr. Ryder also testified, based upon his review of the pertinent maintenance records, that there had been a number of instances over the year prior to September 8, 1984 in which elevator number eight had misleveled, and that this "should have required more than a fix of the situation which caused the defect in each case."
 
 
 11
 It was also shown at trial that pursuant to a contract with Westin, Millar assumed responsibility to "furnish its FULL SERVICE" on certain elevators at the Plaza, including elevator number eight, which undertaking included the repair and replacement of mechanical parts "when conditions warrant, in the opinion of [Millar]," and the periodic examination of "Car Safety Devices" and "governors." Westin's obligations were set forth in paragraph seven of the contract, as follows:
 
 
 12
 [Westin] will maintain personnel competent to inspect and detect irregularities or idiosyncrasies in operation and will shut down the elevators upon detection of the same and notice of such to [Millar].
 
 
 13
 Willis contended that Westin had failed to comply with the requirement as to personnel. Specifically, Willis developed evidence, by cross-examination of Westin witnesses, from which it might be inferred that personnel "competent to inspect and detect irregularities or idiosyncracies" were not on duty during weekends at the Plaza. Willis also argued that Westin had notice of the defect and did not inform Millar. The evidence for this contention consisted of testimony by Willis that she told one or more bellmen at some time prior to the accident on September 8, 1984, and a specified porter at some time prior or subsequent to the accident, that elevator number eight was misleveling; and the fact that Westin received copies of Millar's repair tickets, and maintained a "Millar elevator breakdown log," which allegedly put Westin on notice of Millar's inadequate maintenance.
 
 
 14
 Westin vigorously argued to the district court that under existing New York case law, its contract absolved it of all liability unless it had actual notice of the defect and failed to notify Millar. Over the objection of Westin, which moved for a directed verdict on plaintiff's claim and Westin's cross-claim for indemnification against Millar, the case against Westin was submitted to the jury in the form of special interrogatories. The jury found that both Westin and Millar were negligent, and that the negligence of each was a proximate cause of the accident. Damages were apportioned 80% against Westin and 20% against Millar. Westin's subsequent motion for judgment notwithstanding the verdict or a new trial was denied. Westin's cross-claim for indemnification was dismissed in the court's amended final judgment and second amended final judgment. This appeal followed.
 
 Discussion
 
 15
 A. New York Law.
 
 
 16
 New York's leading elevator maintenance case is Rogers v. Dorchester Assocs., 32 N.Y.2d 553, 300 N.E.2d 403, 347 N.Y.S.2d 22 (1973). That case involved an action against a building owner, building manager and elevator maintenance company for injuries sustained when the plaintiff was struck by an elevator door that did not close properly. As the case came to the Court of Appeals from the Appellate Division, plaintiff had a judgment against the owner and building manager, but not against the maintenance company, and the cross-claim of the owner and building manager against the maintenance company for indemnification had been dismissed. The Court of Appeals, however, granted judgment for the plaintiff against the maintenance company, and also granted the cross-claims for indemnification of the owner and manager against the maintenance company.
 
 
 17
 The maintenance company had an agreement with the manager, as agent for the owner, to "regularly and systematically examine, adjust [and] lubricate" elevator machinery, to "repair or replace" parts if required in the maintenance company's judgment, and to "use all reasonable care to maintain the elevator equipment in proper and safe operating condition." The agreement also provided that the equipment remained in the "possession or control" of the owner. Id. at 558, 300 N.E.2d at 405, 347 N.Y.S.2d at 25.
 
 
 18
 Dealing first with the plaintiff's claims, the Court of Appeals determined that the owner had a nondelegable duty to the plaintiff. Id. at 563, 300 N.E.2d at 408, 347 N.Y.S.2d at 30 (citing N.Y.Mult.Dwell.Law Sec. 78 (McKinney 1974)). The court also found for the plaintiff against the maintenance company, however, finding sufficient circumstantial evidence of negligence, and stating:
 
 
 19
 [The maintenance company] had undertaken, for a substantial fee, to handle exclusively all maintenance on the elevator. It was thus in exclusive control of maintenance, although it obviously was not in exclusive continuous control of the possession and operation of the elevator. The owner and manager were ill-equipped to service the complicated, delicate, and potentially dangerous elevator apparatus. In case of trouble, their employees were instructed to leave all repair work to [the maintenance company].
 
 
 20
 Id. at 561, 300 N.E.2d at 407, 347 N.Y.S.2d at 28.
 
 
 21
 Turning next to the cross-claim of the owner and manager for indemnification, the court said:
 
 
 22
 Their liability arose solely by reason of their nondelegable duty to plaintiff to maintain and repair the elevator. [The maintenance company], however, voluntarily undertook to handle all maintenance and inspection. Therefore, absent actual notice of a defect to [the owner or manager] and their failure to notify [the maintenance company] of the trouble, actual negligence, if found, must have been attributable solely to acts or omissions by [the maintenance company].
 
 
 23
 Id. at 562, 300 N.E.2d at 407, 347 N.Y.S.2d at 28-29 (emphasis added).
 
 
 24
 Subsequent New York cases have followed the rules set down in Rogers. In Strong v. Henra Realty Corp., 89 A.D.2d 829, 453 N.Y.S.2d 192 (1st Dep't 1982), the court read Rogers as precluding liability against the owner or manager where there is "no evidence that [either] had actual notice of the defect." Id. at 830, 453 N.Y.S.2d at 193. In Strong, however, the court found that there was sufficient evidence of notice to the owner to warrant submitting the issue of contribution, as well as indemnification, to the jury. Id. at 830, 453 N.Y.S.2d at 194. In Peters v. Troy Hous. Auth., 108 A.D.2d 999, 485 N.Y.S.2d 149 (3d Dep't 1985), the court upheld the owner's claim for indemnification against the maintenance company, finding that "since [the maintenance company] agreed to perform required maintenance and inspection functions, the judgment on the [owner's] third-party complaint was proper." Id. at 1000, 485 N.Y.S.2d at 150.
 
 
 25
 In Sirigiano v. Otis Elevator Co., 118 A.D.2d 920, 499 N.Y.S.2d 486 (3d Dep't 1986), the plaintiff tripped while exiting a misleveled elevator. Pursuant to contract, "[the maintenance company] was responsible for maintaining the elevators in the building." Id. at 920, 499 N.Y.S.2d at 487. At the close of the evidence, the trial court granted the owner's motion to dismiss the complaint against it on the ground that there was insufficient evidence that the owner had notice of the misleveling elevator.[3] Judgment was thereafter rendered for plaintiff against the maintenance company, which the maintenance company appealed, claiming, inter alia, that it was entitled to contribution from the owner. In affirming, the court reasoned:
 
 
 26
 We are similarly unpersuaded by [the maintenance company's] claim that the complaint should not have been dismissed as against [the owner] so that damages could have been apportioned between [them]. Although [the owner] had a nondelegable duty to plaintiff to maintain and repair the elevator, unless [the owner] had actual notice of the malfunction, its liability was vicarious only; [the maintenance company], who contractually undertook to provide inspection and maintenance on behalf of [the owner], was the party primarily liable. Since there was no proof of actual notice to [the owner] of the defect in the elevator, any judgment against [the owner] would have given rise to a right of full indemnification, without apportionment, against [the maintenance company].
 
 
 27
 Id. at 922, 499 N.Y.S.2d at 488 (citations omitted) (emphasis added).
 
 
 28
 Rogers and its progeny clearly interpret New York law as placing upon a building owner a nondelegable duty to its guests, under which owners are "powerless, as against plaintiff, to avoid liability no matter how extensively they delegated their responsibility to however independent a maintenance contractor." Rogers, 32 N.Y.2d at 563, 300 N.E.2d at 408, 347 N.Y.S.2d at 30. In other words, the owner has "imput[ed] to [it] the negligence of any delegate insofar as plaintiff's rights to recover [a]re concerned, but only to that extent." Id. The purpose of the doctrine is obviously to provide the plaintiff with compensation should the elevator maintenance company be unable to satisfy the judgment. See id., 32 N.Y.2d at 566, 300 N.E.2d at 410, 347 N.Y.S.2d at 32.
 
 
 29
 On the other hand, it is clear that as between an owner and a maintenance company, liability can be delegated pursuant to a "particular 'private' contract between the owner and maintenance company." Id.[4] Rogers, Strong, Peters and Sirigiano all establish the rule that once responsibility for maintenance and repair is delegated under a typical contract for elevator maintenance and repair, an owner is entitled to full indemnification unless it had actual or constructive notice of the defect in the elevator and failed to inform the maintenance company.
 
 
 30
 B. Application of New York Law in This Case.
 
 
 31
 As indicated earlier, the judgment in favor of Willis has been completely satisfied, and she does not appear in this appeal. On the other hand, the cross-claims of Westin and Millar were not submitted to the jury as such, but only inferentially, by an interrogatory that called upon the jury to apportion liability between them in the event both were found liable. Accordingly, we must determine cross-claims between the active parties on this appeal largely by consideration of the evidence and contentions below concerning their liability to Willis.
 
 
 32
 Millar has not appealed the judgment for Willis against Millar. In any event, the evidence against Millar, including its own supervisor's statement that a malfunction in the elevator's downleveling relay coil caused the misleveling; the expert witness' description of the preventive maintenance procedures that should have been undertaken with respect to the relay, and his conclusion from reviewing the pertinent maintenance records that the elevator in question misleveled on numerous occasions in the year preceding the accident; and the testimony of the Millar mechanic assigned to the Plaza concerning the palpably inadequate maintenance procedures which he followed, was adequate to sustain that judgment. More to the present point, it is adequate to call into play the rule of Rogers and its progeny, with the result of indemnification of Westin by Millar, unless some basis can be established to distinguish Rogers from the facts presented here.
 
 
 33
 The jury instructions and accompanying interrogatories established three possible bases for liability by Westin to Willis that might bear upon its cross-claim for indemnification: (1) actual notice before the accident of the defect of the elevator Willis rode; (2) actual notice of "Millar's alleged improper maintenance procedures" by virtue of receiving copies of Millar's repair tickets for the elevators and maintaining an "elevator breakdown log" apparently based thereon; and (3) inadequate weekend inspection personnel and procedures for the Plaza elevators. The third ground must be considered in the context of the contractual provision that:
 
 
 34
 [Westin] will maintain personnel competent to inspect and detect irregularities or idiosyncrasies in operation and will shut down the elevators upon detection of the same and notice of such to [Millar].
 
 
 35
 Millar particularly stresses this provision as not only impacting upon the third ground of liability listed above, but also establishing an overall relationship between Westin and Millar which renders the Rogers rule inapplicable here.
 
 
 36
 We consider these three bases for precluding indemnification seriatim.
 
 
 37
 1. Actual Notice before the Accident of the Defect in Elevator Number Eight.
 
 
 38
 The district court instructed the jury that it could find Westin had "actual notice" of a problem with elevator number eight if it determined that "some person in authority, that is, in a managerial position, actually knew of ... the misleveling before the accident." The only testimony on this subject, however, was by Willis, who testified that she had reported misleveling by that elevator "to the bellmen, different ones I knew." She could not specify any particular bellman, and was equally unclear as to dates. At deposition, she testified that she could not "say ... definitely" that any report had been made within the ten days prior to her accident on September 8, 1984. Pressed at trial, she could not specify the date of any report. She also testified to a conversation with a porter at the Plaza, Willie Hare, on the same subject, but could not specify whether that conversation occurred before or after September 8, 1984.
 
 
 39
 Taken as a whole, this testimony did not suffice to satisfy either the district court's instruction or the requirement of Rogers that "actual notice of [the] defect," 32 N.Y.2d at 563, 300 N.E.2d at 407, 347 N.Y.S.2d at 29, be established. See Monteleone v. Bahama Cruise Line, 838 F.2d 63, 65 (2d Cir.1988) (admiralty case applying federal law, finding impermissible speculation cannot support conclusion of negligence or finding of constructive notice); Anderson v. Klein's Foods, Inc., 139 A.D.2d 904, 904-05, 527 N.Y.S.2d 897, 897-98 (4th Dep't) ("mere speculation" concerning defendant's knowledge "insufficient to prove ... either actual or constructive notice"), aff'd mem., 73 N.Y.2d 835, 534 N.E.2d 319, 537 N.Y.S.2d 481 (1988) (adopting opinion below); Holscher v. State of New York, 59 A.D.2d 224, 227, 399 N.Y.S.2d 268, 271 (3d Dep't 1977) (evidence insufficient where proof of notice "ambiguous and imprecise"), aff'd mem., 46 N.Y.2d 792, 386 N.E.2d 831, 413 N.Y.S.2d 920 (1978) (adopting opinion below).[5]
 
 
 40
 2. Notice of Millar's Inadequate Procedures.
 
 
 41
 Willis also contended during trial that because Westin received copies of Millar repair tickets and maintained a "Millar elevator breakdown log" apparently based thereon, Westin was put on notice of Millar's "improper maintenance procedures." Apparently, the theory was that upon receipt of this "notice," Westin was to alert Millar of its inadequate maintenance. This theory is unsupported by New York law. Indeed, the very reason that Westin hired Millar was because Millar is the elevator expert. The "notice" discussed in Rogers and its progeny is not notice of this nature from the maintenance company to the building owner, but rather notice of an elevator malfunction that the building owner receives from a different source but fails to relay to the maintenance company so it can take corrective action. It would turn the relationship between Westin and Millar on its head to require Westin to decipher Millar's maintenance and repair records and then tell Millar, the hired elevator expert, the respects in which its maintenance and repair procedures were deficient.
 
 
 42
 3. Inadequate Weekend Inspection Personnel and Procedures for the Plaza Elevators.
 
 
 43
 Perhaps in recognition of the problematic nature of the notice theories in this case, Millar does not attempt to argue here that the notice was sufficient. Instead, Millar endeavors to distinguish Rogers and its progeny, asserting that "the claim of actual notice to Westin never arises in this case because of the active negligence on the part of Westin." Although Millar does not dispute its own negligence in the maintenance of the malfunctioning elevator, Millar contends that Westin also failed to meet its obligation under paragraph seven of its contract with Millar to "maintain personnel competent to inspect and detect irregularities or idiosyncrasies in [elevator] operation...."
 
 
 44
 Specifically, Millar contends in its brief on appeal:
 
 
 45
 As confirmed by Dr. Ryder [plaintiff's expert], such inspection is an important part of preventive maintenance. Inadequate preventive maintenance was the cause of the accident. Therefore, just as MILLAR'S actions or omissions on preventive maintenance were the proximate cause, so was Westin's inaction and omission regarding preventive maintenance the proximate cause of the accident. Certainly, the jury was free to draw the reasonable inference that both MILLAR and Westin were negligent concerning inadequate inspection procedures. Inadequate inspection is part and parcel of preventive maintenance which was stated to be the cause of the accident.
 
 
 46
 Each aspect of preventive maintenance cannot be separated. Inspection of the elevator and its equipment is essential for preventive maintenance, and the fact that Westin was negligent in not maintaining competent personnel to conduct these inspections was a proximate cause of the accident. Therefore, as a whole the lack of preventive maintenance, including the lack of adequate weekend personnel and procedures by Westin, was the proximate cause of the accident.
 
 
 47
 Millar's brief at 17 (emphasis added).
 
 
 48
 Although "inspection of the elevator and its equipment" is obviously "essential to preventive maintenance," this was not Westin's duty under the contract. The service contract, fairly read, shows that Millar, as the paid elevator expert, was to maintain and repair the equipment that controls the elevators, while Westin was only to look for and report problems in the operation of the elevators. There is no fair basis for reading Westin's contractual obligation to "maintain personnel competent to inspect and detect irregularities or idiosyncrasies in operation" as imposing a requirement that Westin, jointly with Millar, assume responsibility for "[i]nspection of the elevator and its equipment," as Millar contends in its brief. Rather, Millar was to perform the preventive maintenance to detect and prevent problems prior to the occurrence of an elevator malfunction, while Westin was to report problems after they occurred, and maintain personnel competent to detect such problems. As the elevator expert, Dr. Ryder, testified without controversion, reporting problems after they occur is not preventive maintenance at all.
 
 
 49
 Millar might nonetheless contend that Westin failed in the duty that the contract did impose upon Westin (i.e., to have competent personnel on hand during the weekend in issue to inspect and detect operational problems), and that this was the "proximate cause" of the injury to Willis. Westin, however, was liable to Willis in any event because of Westin's nondelegable duty to Willis under N.Y.Mult.Dwell.Law Sec. 78 (McKinney 1974). As between Westin and Millar, the cognate inquiries would be whether Westin breached its contractual duty of inspection, and whether that breach resulted in damages to Millar (i.e., Millar's liability to Willis). See Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261, 493 N.E.2d 234, 235, 502 N.Y.S.2d 131, 132 (1986) (per curiam) (to be recoverable, damages must be caused by and "directly traceable to the breach, not remote or the result of other intervening causes"); Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N.Y. 209, 217, 31 N.E. 1018 (1892) (same).
 
 
 50
 There is no proof to sustain such a position. Specifically, there is no evidence that after the departure of Millar's resident mechanic from the Plaza at 4:30 p.m. Friday, September 7, 1984, until the malfunction of the misleveling elevator on Saturday, September 8, 1984 between 7:30 and 8:00 p.m., there was any warning of the latter occurrence which would have been discerned by more competent or vigilant Westin personnel. This fatal defect in Millar's position cannot be remedied by speculation or conjecture. Monteleone v. Bahama Cruise Line, 838 F.2d at 65; Unijax, Inc. v. Champion Int'l, Inc., 683 F.2d 678, 684 (2d Cir.1982); Michelman v. Clark-Schwebel Fiber Glass Corp., 534 F.2d 1036, 1042 (2d Cir.), cert. denied, 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976); Anderson v. Klein's Foods, Inc., 139 A.D.2d at 904-05, 527 N.Y.S.2d at 897-98.
 
 
 51
 We therefore conclude that, no meaningful basis for distinction appearing, the present case falls squarely within the rule of Rogers and its progeny. Westin was accordingly entitled to judgment on its cross-claim for indemnification against Millar.
 
 Conclusion
 
 52
 The second amended final judgment is affirmed insofar as it was in favor of Willis jointly and severally against Westin and Millar and dismissed all claims by and against Westinghouse; reversed insofar as it apportioned the judgment in favor of Willis between Westin and Millar, dismissed Westin's cross-claim for indemnification against Millar, and granted Westin and Millar's cross-claims for contribution against each other; and remanded for the entry of judgment for Westin on its cross-claim for indemnification against Millar, dismissal of Westin's contractual cross-claim against Millar as moot, and dismissal of Millar's cross-claim for indemnification against Westin.
 
 LUMBARD, Circuit Judge (dissenting):
 
 53
 The issue between Westin, the operator of the Hotel Plaza, and Millar, the elevator maintenance company, is a simple one: the degree to which one or both of them were responsible for the malfunctioning of the elevator which caused the injuries to Grace Willis.
 
 
 54
 The accident occurred about 7:30 p.m. on a Saturday evening when Willis tripped and fell in stepping out of elevator # 8, which had stopped two inches above the level of the sixteenth floor. Willis was a permanent resident of the Plaza. She testified that, on a number of unspecified occasions, she had spoken to Plaza employees about the misleveling of the elevator and the sudden closing of the elevator door, among them the lobby porter Willie Hare, the bellman Bobby, and people at the front desk. The Plaza did not call any witnesses regarding Willis's complaints. Obviously, the jury resolved the issue of whether the Plaza received actual notice in favor of Willis, and the record contains evidence adequate to support this conclusion.
 
 
 55
 The Plaza's contract with Millar provided that Millar was to have a representative at the hotel from 8:00 a.m. to 4:30 p.m. (5:00 p.m. in practice) Mondays through Fridays; at other times Millar was on call. Under the contract, the Plaza was obligated to "maintain personnel competent to inspect and detect irregularities or idiosyncrasies in operation" and to shut down any elevator not functioning properly. Thus, during more than 26 hours, from 5:00 p.m. Friday, September 7 until about 7:30 p.m. Saturday, September 8, the Plaza had sole responsibility for detecting operational irregularities and, if there was an unsafe condition, for taking the elevator out of service. Although on call, Millar could take care of a weekend emergency only if the Plaza called Millar. There is no evidence that any Plaza employee inspected the malfunctioning elevator between 5:00 p.m. Friday and the time of the injury Saturday evening.
 
 
 56
 On this record it is small wonder that the jury decided that the Plaza was 80% responsible and Millar was 20% responsible for Willis's injuries. Although there is no way of knowing exactly when the elevator's misleveling could or should have been discovered, it surely commenced or continued misleveling sometime after 5:00 p.m. Friday, September 7th, during the period when the Plaza had the responsibility for inspection and action.
 
 
 57
 The alleged errors committed by the court in excluding the testimony of Plaza's expert, and in the wording of the interrogatories which the court presented to the jury, could hardly have changed the result. Any defect in Millar's keeping of maintenance records or its deviation from customary practices in elevator maintenance cannot excuse the Plaza from its duty, from 5:00 p.m. Friday until Monday morning, to see that the elevators were functioning properly.
 
 
 58
 Although the court's exclusion of Westin's expert testimony on conflict of interest grounds, because the expert's son had previously worked for the predecessor law firm to Willis's law firm, may well have been an abuse of discretion, there was sufficient time for Willis to retain another expert or to advise the court if that could not be done in time. In any event, the proffered testimony of the expert that Millar's keeping of records was not in accordance with accepted standards could hardly have had a substantial effect on the jury's verdict. In short, the jury had every reason to believe that the immediate cause of the accident was the Plaza's failure to inspect the elevator during the 26-hour period when it had the responsibility to do so, and to shut it down before Willis's misadventure on Saturday evening. Consequently, I see no need to disagree with the trial judge's denial of Westin's motion for judgment notwithstanding the verdict.
 
 
 59
 In any event, on this record, there is no justification for an appellate court to substitute its own judgment, which would reduce Westin's share of liability from 80% to zero, for that of the jury and the trial judge who heard and saw the witnesses.
 
 
 60
 The court makes poor use of its resources to find such error in this diversity case. There is no need to nullify the action of the jury and direct an entirely different and, in my view, unjust result.
 
 
 61
 If my colleagues think there was substantial error in the trial, the only proper course, on this record, is to remand to the district court for a new trial of the issues between Westin and Millar. This court, examining a cold record, is surely no better able to determine the degree of responsibility for Willis's accident than were the jurors who saw and heard the witnesses.
 
 
 62
 I would affirm the judgment of the district court.
 
 
 
 *
 The Honorable Con. G. Cholakis of the United States District Court for the Northern District of New York, sitting by designation
 
 
 [1]
 Both the initial and second amended final judgments dismissed "all claims by and against Westinghouse Electric Corp., individually and d/b/a Millar Elevator Company" ("Westinghouse"). Colloquy between counsel and the district court at the charging conference indicates that Westinghouse may be Millar's parent. The district court was of the view that no evidence had been introduced implicating Westinghouse, and did not include any reference to Westinghouse in the instructions to the jury. Westin pursues on appeal only its cross-claims against Millar, and judgment was entered for plaintiff only against Westin and Millar. Accordingly, we do not deal with Westinghouse hereinafter
 
 
 [2]
 Westin also asserts various errors in the conduct of the trial. In view of our disposition of this appeal, we do not address these contentions
 
 
 [3]
 In view of the owner's nondelegable duty to the plaintiff, articulated in Rogers as premised upon N.Y.Mult.Dwell.Law Sec. 78 (McKinney 1974), it seems erroneous to have dismissed the owner from the case. In affirming, the Appellate Division noted that since the maintenance company, the only appellant, was not entitled to apportionment, it was not aggrieved by the dismissal. Sirigiano, 118 A.D.2d at 921-22, 499 N.Y.S.2d at 488
 
 
 [4]
 The extent of Millar's responsibility under its contract is arguably greater than that of the maintenance company in Rogers. In Rogers, the company was apparently on site only two or three times a week to inspect the elevators. See id., 32 N.Y.2d at 558, 561, 300 N.E.2d at 405, 407, 347 N.Y.S.2d at 25-26, 28. Here, however, Millar's contract required it to "provide a resident mechanic Monday-Friday, 8:00 a.m.--4:30 p.m. except legal and union holidays."
 
 
 [5]
 It is not settled in this circuit whether, in a diversity case, the sufficiency of the evidence to warrant submission of an issue to a jury is a question governed by federal or state law. See Brady v. Chemical Constr. Corp., 740 F.2d 195, 202 n. 7 (2d Cir.1984); Index Fund, Inc. v. Ins. Co. of N. Am., 580 F.2d 1158, 1163 (2d Cir.1978), cert. denied, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979); Mehra v. Bentz, 529 F.2d 1137, 1139 n. 2a (2d Cir.1975), cert. denied, 426 U.S. 922, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); Calvert v. Katy Taxi, Inc., 413 F.2d 841, 846 (2d Cir.1969); Evans v. S.J. Groves & Sons Co., 315 F.2d 335, 342 n. 2 (2d Cir.1963); see generally 9 C. Wright & A. Miller, Federal Practices and Procedure Sec. 2525 (1971). Consistently with the cited cases, we decline to decide the question, since there appears to be no material difference between the two standards, at least as applied here