■ PHILIP E. HUBBARD, JR., et al., Individually and as Parents and Guardians of JAMIE L. HUBBARD, an Incapacitated Person, Appellants, v COUNTY OF MADISON et al., Respondents. [939 NYS2d 619]—

Peters, J. Appeal from an order of the Supreme Court (McDermott, J.), entered September 1, 2011 in Madison County, which, among other things, granted defendants' motions for summary judgment dismissing the complaint.

In January 2008, Jamie L. Hubbard was driving westbound on Roberts Road in the Town of Lenox, Madison County when she lost control of her vehicle, crossed into the oncoming lane of traffic and collided with a vehicle driven by defendant Joseph H. Sadlowski. Hubbard sustained catastrophic injuries as a result of the accident, including traumatic brain injury and quadriplegia, and has no memory of the collision or any of the events preceding it.

Plaintiffs commenced this action alleging that Sadlowski was negligent in the operation of his vehicle and that defendant County of Madison negligently maintained, designed and

constructed the subject roadway and failed to provide adequate signage. Following joinder of issue, Sadlowski moved for summary judgment dismissing the complaint, alleging that he was confronted with an emergency situation not of his making and acted reasonably in the face of the emergency. The County separately moved for summary judgment contending, among other things, that it had no prior written notice of any allegedly dangerous or defective condition on Roberts Road and that any alleged condition or defect was not the proximate cause of the accident. Supreme Court granted both motions, prompting this appeal by plaintiffs.

The emergency doctrine " 'recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context' " (*Caristo v Sanzone*, 96 NY2d 172, 174 [2001], quoting *Rivera v New York City Tr. Auth.*, 77 NY2d 322, 327 [1991]). Such an emergency situation arises when a vehicle traveling in the opposite direction crosses into a driver's lane (*see Cancellaro v Shults*, 68 AD3d 1234, 1236 [2009], *lv denied* 14 NY3d 706 [2010]; *Mandel v Benn*, 67 AD3d 746, 747 [2009]; *Dearden v Tompkins County*, 6 AD3d 783, 784 [2004]; *Burnell v Huneau*, 1 AD3d 758, 760 [2003]). "Whether a driver's actions in an emergency situation were reasonable is ordinarily a question of fact, but summary judgment may be granted 'when the driver presents sufficient evidence to establish the reasonableness of his or her actions and there is no opposing evidentiary showing sufficient to raise a legitimate question of fact on the issue' " (*Cancellaro v Shults*, 68 AD3d at 1236, quoting *Burnell v Huneau*, 1 AD3d at 760; *see Lamey v County of Cortland*, 285 AD2d 885, 886 [2001]; *Smith v Brennan*, 245 AD2d 596, 597 [1997]).

Sadlowski testified that he was driving easterly along Roberts Road when he first observed Hubbard's vehicle as she was coming out of the second of two left curves on Roberts Road. He testified that he was driving at no more than 45 miles per hour and within the posted speed limit, and described the weather as cloudy and the road as flat, level and clear of snow. Sadlowski explained that, upon first observing Hubbard's vehicle as it came out of the second curve, it appeared to have "been off the shoulder of the road or on the shoulder off the edge of the highway." Sadlowski testified that after he took his foot off of

the accelerator to slow down because it appeared that Hubbard was attempting to get back onto the roadway, Hubbard's vehicle "came right across" into his lane of travel and collided with the front of his vehicle. According to Sadlowski, three seconds passed between the time he first observed Hubbard's vehicle and the collision. He testified further that when Hubbard's vehicle suddenly crossed into his lane, "it was too close" and there was no time to stop. A deputy sheriff trained in accident reconstruction who arrived at the scene shortly after the accident took various measurements, inspected the area and concluded, from his examination of all of the available evidence, that the point of impact between the two vehicles had taken place wholly within the eastbound lane in which Sadlowski was traveling. Notably, nothing contained in the police report or elsewhere in the record is inconsistent with Sadlowski's account (*see Cancellaro v Shults*, 68 AD3d at 1237). By his uncontradicted testimony, Sadlowski established that he " 'was confronted with an emergency and was not negligent in regard to the emergency,' thereby shifting the burden to plaintiff[s] to establish the existence of issues of fact" (*Cancellaro v Shults*, 68 AD3d at 1237, quoting *Cohen v Masten*, 203 AD2d 774, 776 [1994], *lv denied* 84 NY2d 809 [1994]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

In opposition to Sadlowski's motion, plaintiffs presented the affidavits of an engineer, a body shop owner and their attorney. The body shop owner's "estimate" that Sadlowski's vehicle was traveling 55 miles per hour upon impact with Hubbard's vehicle constitutes pure speculation (*see Cancellaro v Shults*, 68 AD3d at 1237; *Bavaro v Martel*, 197 AD2d 813, 814 [1993]), and the affidavit of plaintiffs' attorney, who had no personal knowledge of the salient facts, was likewise without evidentiary value and insufficient to defeat the motion (*see Zuckerman v City of New York*, 49 NY2d 557, 563 [1980]; *DiBartolomeo v St. Peter's Hosp. of the City of Albany*, 73 AD3d 1326, 1327 [2010]; *Haire v Bonelli*, 57 AD3d 1354, 1357 [2008]; *Prince v Accardo*, 54 AD3d 837, 838 [2008]). Plaintiffs' engineer opined that Sadlowski could have done something to avoid the accident, such as slow down, stop immediately upon seeing Hubbard's car cross into his lane or swerve into the open, oncoming lane of traffic. These conclusions, however, are both speculative and grounded upon incorrect facts. For instance, the engineer's opinion was based on his assumption that the road was dry at the time of the accident, but this assumption finds no support in the record and is contradicted by the deposition testimony of the three officers who first responded to the scene, all of whom testified that the road was slippery. Moreover, while the engineer opined that

Sadlowski could have avoided the accident given his sight distance from when he observed Hubbard's vehicle "reenter" the roadway from the shoulder, he expressed no opinion regarding when Hubbard's vehicle crossed the center line and how long Sadlowski then had to react. It is well settled that "[a] driver in his [or her] proper lane of travel is not required to anticipate that a car going in the opposite direction will cross over into that lane" (*Lamey v County of Cortland*, 285 AD2d at 886 [internal quotation marks and citations omitted]; *see Cancellaro v Shults*, 68 AD3d at 1236; *Wasson v Szafarski*, 6 AD3d 1182, 1183 [2004]; *Burnell v Huneau*, 1 AD3d at 760). As " '[s]peculation regarding evasive action that a defendant driver should have taken to avoid a collision, especially when the driver had, at most, a few seconds to react, does not raise a triable issue of fact' " (*Cancellaro v Shults*, 68 AD3d at 1237, quoting *Dearden v Tompkins County*, 6 AD3d at 785; *see Burnell v Huneau*, 1 AD3d at 761; *Lamey v County of Cortland*, 285 AD2d at 887), the complaint was properly dismissed as against Sadlowski.*

Supreme Court properly awarded summary judgment to the County. Local Law No. 3 (1978) of the County of Madison provides that no civil action for damages or injuries to person or property arising out of alleged highway defects may be maintained against the County in the absence of prior written notice. Here, it is undisputed that no such notice was given to the County. With respect to plaintiffs' claim that the accident was caused by a "lip" of more than two inches from the paved portion of the highway to the shoulder, they contend that no prior written notice was required because the County created the defect through an affirmative act of negligence (*see Oboler v City of New York*, 8 NY3d 888, 889 [2007]; *Amabile v City of Buffalo*, 93 NY2d 471, 474 [1999]). However, the affirmative negligence exception to prior written notice statutes applies only where the action of the municipality " 'immediately results in the existence of a dangerous condition' " (*Yarborough v City of New York*, 10 NY3d 726, 728 [2008], quoting *Oboler v City of New York*, 8 NY3d at 889; *see San Marco v Village/Town of Mount Kisco*, 16 NY3d 111, 117 [2010]; *Boice v City of Kingston*, 60 AD3d 1140, 1141 [2009]). While evidence was presented that the County resurfaced the roadway and widened it from 20 to 24 feet in 2002, plaintiffs presented no proof establishing that

* We note that, inasmuch as there was no showing of facts from which negligence on the part of Sadlowski may be inferred, the lesser standard of proof set forth in *Noseworthy v City of New York* (298 NY 76 [1948]) is inapplicable (*see Wank v Ambrosino*, 307 NY 321, 323-324 [1954]; *Fisher v Farrell*, 183 AD2d 1010, 1011 [1992]; *Gardner v Ethier*, 173 AD2d 1002, 1004 [1991]; *Mildner v Wagner*, 89 AD2d 638, 638 [1982]).

any alleged differential between the roadway and the shoulder was the immediate result of this activity, as opposed to a condition that evolved over time (*see Oboler v City of New York*, 8 NY3d at 889-890; *Stride v City of Schenectady*, 85 AD3d 1409, 1410-1411 [2011]; *Davis v City of Schenectady*, 65 AD3d 743, 745 [2009]; *Boice v City of Kingston*, 60 AD3d at 1141-1142).

As for their claims alleging negligent design of the roadway and failure to erect adequate and proper warning signs, we agree with plaintiffs that the prior written notice requirements do not apply to these alleged defects (*see O'Buckley v County of Chemung*, 88 AD3d 1140, 1141 [2011]; *Lugo v County of Essex*, 260 AD2d 711, 713 [1999]; *Akley v Clemons*, 237 AD2d 780, 781-782 [1997]). Nevertheless, plaintiffs failed to satisfy their burden of coming forward with evidence raising a question of fact concerning any negligence on the part of the County in this regard.

Plaintiffs submitted no proof that the signage that was in place at the time of the accident was obscured, inadequate or otherwise failed to comply with acceptable standards. With respect to their claim that the double curve design of Roberts Road is inherently dangerous, plaintiffs offered the affidavits of two engineers who averred that the design of the curve violated "good highway design engineering and construction practice." Even assuming that these affidavits were sufficient to establish a design defect, it is firmly established that, "[i]n maintaining older highways, [a municipality] is not obliged to undertake expensive reconstruction simply because highway safety design standards have changed since the original construction" (*Van De Bogart v State of New York*, 133 AD2d 974, 976 [1987]; *see Racalbuto v Redmond*, 46 AD3d 1051, 1052 [2007]; *Evans v Stranger*, 307 AD2d 439, 441 [2003]; *Holscher v State of New York*, 59 AD2d 224, 226-227 [1977], *affd* 46 NY2d 792 [1978]). Rather, upgrades are necessary only when a roadway has a history of accidents or undergoes significant repairs or reconstruction (*see Madden v Town of Greene*, 64 AD3d 1117, 1119 [2009]; *Hay v State of New York*, 60 AD3d 1190, 1191 [2009]; *Cave v Town of Galen*, 23 AD3d 1108, 1108-1109 [2005]; *Preston v State of New York*, 6 AD3d 835, 835-836 [2004], *lv denied* 3 NY3d 601 [2004]). Here, the uncontradicted proof submitted by the County established that it did not design Roberts Road, but rather inherited it from Chenango County in 1803, and there is no evidence that the roadway—which was designed in the "horse-and-buggy days"—was not designed in compliance with standards in effect at the time. Furthermore, there is no documented history of accidents in the vicinity of the double curve on

Roberts Road which would place the County on notice of the need for reconstruction or remediation of the roadway, and merely widening a roadway and overlaying it with new pavement, "as opposed to 'ripping it out and rebuilding it or reconfiguring it,' does not constitute significant repair or reconstruction for the purpose of requiring a municipality to upgrade a roadway to comply with current design standards" (*Madden v Town of Greene*, 64 AD3d at 1120, quoting *Hay v State of New York*, 60 AD3d at 1192). Moreover, on this record, it would be entirely speculative to conclude that any inadequate signing or defective highway design contributed to the accident (*see Donato v County of Schenectady*, 156 AD2d 859, 861 [1989]). For these reasons, Supreme Court properly granted the County's motion for summary judgment.

Plaintiffs' remaining contentions have been reviewed and found to be without merit.

Mercure, A.P.J., Malone Jr., Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.