**MAGNUM FOODS, INC. d/b/a Little Caesar's Pizza of Oklahoma, Plaintiff–Appellant/Appellee/Cross–Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, an Illinois corporation, and American Casualty Company of Reading, Pennsylvania, a Pennsylvania corporation, both d/b/a The CNA Insurance Companies, Defendants–Appellees/Appellants/Cross–Appellees.**

Nos. 92–6148, 92–6344 and 92–6355.

United States Court of Appeals,
Tenth Circuit.

Sept. 16, 1994.

sualty Company and American Casualty Company of Reading, Pennsylvania (collectively CNA), determining that a punitive damage award rendered against Magnum in a state court action was covered under its policies with CNA. Magnum also sought damages on a claim of bad faith by CNA in handling and in settling the state court suit that led to the punitive damage award, *inter alia.* The court below entered a partial summary judgment for CNA in the declaratory judgment suit, holding that CNA is not liable for the punitive damage award. This order was certified for appeal under Fed.R.Civ.P. 54(b), and Magnum appeals the ruling (No. 92-6148).

The bad faith claim of Magnum for legal relief in the federal suit went to the jury, which awarded Magnum $750,000 in compensatory damages. The jury also awarded Magnum $750,000 in punitive damages on its bad faith claim against CNA. The district court denied CNA's motion for judgment notwithstanding the verdict and awarded attorney fees and expenses to Magnum. CNA appeals, challenging the denial of its motions for a directed verdict and judgment notwithstanding the verdict, the sufficiency of the evidence of damages, and the award of attorney fees (No. 92-6344). Finally, Magnum appeals the district court's refusal to award it prejudgment interest (No. 92-6355).

Our jurisdiction arises under 28 U.S.C. § 1291. We affirm in part, reverse in part, vacate in part, and remand.

Michael W. Hinkle of Mills, Whitten, Mills, Mills & Hinkle, Oklahoma City, OK (Reggie N. Whitten and Glynis C. Edgar of Mills, Whitten, Mills, Mills & Hinkle, Oklahoma City, OK, with him on the brief), for plaintiff-appellant/appellee/cross-appellant.

Thomas B. Kelley of Cooper & Kelley, Denver, CO (John R. Mann of Cooper & Kelley, Denver, CO, and Douglas C. McBee of Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, OK, with him on the brief), for defendants-appellees/appellants/cross-appellees.

Before BRORBY, HOLLOWAY, and KELLY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff Magnum Foods, Inc. (Magnum) filed this federal suit seeking a declaratory judgment against defendants Continental Ca-

## I

### The Factual Background

This controversy had its origin in an incident that occurred on September 3, 1989. On that night James Martina, who was employed by Magnum Foods as an associate manager of one of its Little Caesar's Pizza restaurants, raped and sodomized a female minor (hereinafter "victim"), who was also a Magnum employee, while she was on duty alone with him. Martina was subsequently convicted by a jury and sentenced to two concurrent ninety-nine year terms in prison.

The victim, who was sixteen years old, along with her parents (collectively "plaintiffs"), filed suit in state court in Oklahoma against Martina for assault and against Magnum for negligent hiring, supervision, and retention of Martina. Evidence at this state trial showed that Martina had a prior felony conviction in New York for attempted sexual assault on a child and a prior Oklahoma conviction for embezzlement in connection with the theft of tires from an employer. The evidence also showed that Martina had lied about his criminal record on his application for employment with Magnum. In addition, the plaintiffs introduced evidence that prior to the rape, Martina had repeatedly sexually harassed other employees under his supervision by propositioning them for sex and making lewd and graphic remarks to and about them to other employees. His conduct was so offensive that some young women refused to close the store at night because that would require them to work alone with him.

Martina's misconduct had been reported to store managers Linda Rogers and Bob Bealmer. Rogers complained about Martina to area supervisor Terry Duckworth, who spoke to area director Mark Conover about the problem. Rogers verbally reprimanded Martina on three occasions about his conduct toward female employees, and Bealmer issued a written warning to Martina, which was sent to the home office to be included in Martina's personnel file. Although Martina' conduct was in clear violation of Magnum's written policy against sexual harassment, he was neither fired nor suspended for his actions prior to the rape.

The jury in the state case returned a general verdict finding Martina and Magnum liable for compensatory damages in the amount of $750,000, but finding the victim responsible for ten percent of her damages, thus reducing the compensatory award to $675,000. The jury also assessed punitive damages against Magnum for $750,000 and against Martina for $5 million.

At the time of the rape, Magnum was insured by the CNA companies for $6 million in liability coverage. The policies did not exclude coverage for punitive damages. However, when the state lawsuit was filed, CNA sent a reservation of rights letter to Magnum, advising that CNA would defend the lawsuit but that there was a potential for uninsured punitive damages. The letter said that Magnum might wish to retain separate counsel, which it did. During pretrial negotiations, Magnum requested that CNA settle the case. The plaintiffs offered to settle their claims against Magnum for $495,000, but CNA refused to offer more than $350,-000, despite Magnum's urging that it do so in order to avoid exposing Magnum to liability by going to trial.

Following the judgment against it, Magnum filed this action against CNA seeking a declaratory judgment that the CNA policies covered the punitive damages awarded in the state case and seeking damages for CNA's alleged breach of its duty to act in good faith under the insurance policies.

The district court entered a partial summary judgment in the instant federal declaratory judgment action for CNA. The court held that Oklahoma public policy prohibits insurance coverage for punitive damages assessed directly against an employer for its own "wanton, willful, malicious, and/or grossly negligent" conduct. Therefore, the judge concluded that no insurance coverage was available to Magnum for the punitive damages award, since the state jury had found Magnum directly liable for its own acts in connection with the injuries to the victim:

> The policy language, while being sufficiently broad enough to include coverage for punitive damages, does not cover the punitive damage award against Magnum as both the verdict forms, as well as the jury instructions, clearly reflect Magnum was found liable and Magnum's liability was not vicarious.

Order of March 26, 1992, at 7.

The court denied CNA's motion for summary judgment on Magnum's bad faith claim. Trial to a jury was held on that claim in federal court on May 21–29, 1992, and, at the close of Magnum's case, CNA moved for a

directed verdict.[1] The district judge denied the motion and the jury awarded Magnum $750,000 in compensatory and $750,000 in punitive damages. The judge denied CNA's motion for judgment notwithstanding the verdict on September 30, 1992. In that same order, the court awarded Magnum its attorney's fees incurred in litigating the bad faith claim as well as fees incurred in the state litigation. The court denied Magnum's request for prejudgment interest.

Magnum appeals the federal declaratory judgment in favor of CNA, denying coverage for the state court punitive award. CNA appeals from the federal judgment against it on the bad faith claim and from the order which awarded Magnum attorney fees. Magnum cross-appeals from that same order insofar as it denied prejudgment interest.

## II

### Insurance Coverage of Punitive Damages

■■ In this diversity case we apply Oklahoma law to evaluate whether the punitive damages assessed against Magnum are covered by the insurance policies. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brady v. Hopper,* 751 F.2d 329, 332 (10th Cir.1984). We review the grant of partial summary judgment de novo and apply the same legal standard used by the district court in evaluating the motion under Fed.R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence and draw any

inferences in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991). If the moving party satisfies its initial burden of informing the district court of the basis for its motion, identifying the portions of the pleadings, depositions and the like which it believes demonstrate the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), then the nonmoving party must identify sufficient evidence that would require submission of the case to a jury. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Tavery v. United States,* 32 F.3d 1423, 1430 n. 7 (10th Cir.1994). The district court's legal conclusions, even as to the law of the state of the district judge, are reviewed de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

■■ Oklahoma courts adhere to the view that public policy prohibits liability insurance coverage of punitive damages except where the party seeking the benefit of insurance coverage has been held liable for punitive damages solely due to conduct of another, under principles of vicarious liability. *See, e.g., Dayton Hudson Corp. v. American Mut. Liability Ins. Co.,* 621 P.2d 1155, 1156 (Okla.1980).[2] Magnum argues that the punitive damages rendered against it in the state litigation could have been based on principles of vicarious liability, and that therefore the district court erred by holding that Oklahoma law prohibits the recovery of indemnity for these damages from CNA. We disagree.

---

1. Although the trial took place after Fed.R.Civ.P. ("Rule") 50(a) and 50(b) were amended to denominate the familiar motions for a directed verdict and judgment notwithstanding the verdict as motions for judgment as a matter of law, counsel for both parties have adhered to the old terminology. Although we refer to the parties' motions as they were presented to the district court, we believe it best to use the new terminology in our opinion whenever possible. *See, e.g., Pendleton v. Conoco Inc.,* 23 F.3d 281, 282 (10th Cir.1994).

2. *See also Oliver v. Producers Gas Co.,* 798 P.2d 1090 (Okla.App.1990) (holding that insurance policy proceeds received from tortfeasor could not be applied to punitive damages); *Aetna Cas. & Sur. Co. v. Craig,* 771 P.2d 212, 215 (Okla. 1989) ("when the insured/employer is party to or acquiesces in, the wrongful acts, liability insurance will not protect it against awards of punitive damages because of his, the insured's, 'positive wrongdoing.' "); Michael A. Rosenhouse, Annotation, *Liability Insurance Coverage as Extending to Liability for Punitive or Exemplary Damages,* 16 A.L.R.4th 11 (1982).

**1498**

Because the jury instructions and applicable law demonstrate that Magnum was held directly liable for its own gross negligence in hiring, supervising, or retaining Martina, we affirm the district court's partial summary judgment in favor of CNA in the declaratory judgment action.[3]

In *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.*, the Oklahoma Supreme Court embraced the *McNulty*[4] rule against allowing insurance coverage of punitive damages. 621 P.2d at 1160. The Court reasoned that since the purpose of punitive damages is to punish and deter wrongdoers rather than to compensate injured parties, allowing the party responsible for the wrong to shift that liability to its insurer would defeat this purpose. Moreover, the burden of punitive damages would not remain on the insurer but would ultimately come to rest on the public at large in the form of higher insurance premiums. "Society would then be punishing itself rather than the actual author of the wrong." *Id.* at 1159.

■ However, since cases of vicarious liability (such as respondeat superior) involve conduct by someone other than the policyholder, it does not contravene public policy to allow coverage of such liability. *Id.* at 1160. The issue before us, then, is whether punitive damages were imposed on Magnum under the doctrine of respondeat superior for a tort committed by an employee acting within the scope of his employment,[5] or awarded based on Magnum's own gross negligence in hiring or retaining an employee who it knew or should have known had a propensity to cause harm.[6] *Id.*

■ As an initial matter, we note that an insurer who undertakes the defense of a suit against its insured must meet a high standard of conduct. *Duke v. Hoch*, 468 F.2d 973, 978 (5th Cir.1972); *Gay & Taylor, Inc. v. St. Paul Fire & Marine Ins. Co.*, 550 F.Supp. 710, 714–16 (W.D.Okla.1981). The right to control the litigation carries with it certain duties. *Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co.*, 129 F.2d 621, 627 (10th Cir.1942). One of these is the duty not to prejudice the insured's rights by failing to request special interrogatories or a special verdict in order to clarify coverage of damages. *See Gay & Taylor*, 550 F.Supp. at 716. The reason for this is that when grounds of liability are asserted, some of which are covered by insurance and some of which are not, a conflict of interest arises between the insurer and the insured. If the burden of apportioning damages between covered and non-covered were to rest on the insured, who is not in control of the defense, the insurer could obtain for itself an escape from responsibility merely by failing to request a special verdict or special interrogatories. *Duke*, 468

3. Magnum has submitted a motion for an order certifying a question of state law to the Oklahoma Supreme Court. The question concerned the negligent hiring and retention claim and possible insurance coverage for punitive damages. Because we are satisfied that *Dayton Hudson*, 621 P.2d 1155, has settled this issue, we decline to certify this question. Accordingly, Appellant's (Magnum's) Motion to Certify is denied.

4. *Northwestern Nat. Cas. Co. v. McNulty*, 307 F.2d 432, 440 (5th Cir.1962) ("Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.")

5. Oklahoma does not impose the ratification requirement of Section 909 of the Restatement (Second) of Torts; thus it would be possible for the jury to have imposed punitive damages against Magnum even without finding that it participated in or authorized the negligent acts of its employees. *See Kurn v. Radencic*, 193 Okl. 126, 141 P.2d 580, 581 (App.1943) ("In this jurisdiction [exemplary damages] may be awarded against a principal or employer for the act of an agent or employee even though the principal did not personally participate in, authorize or ratify the act complained of.") *See also Rodebush v. Oklahoma Nursing Homes, Ltd.*, 867 P.2d 1241, 1245–46 (Okla.1993) (holding nursing home liable for the intentional tort of its employee); *Moore v. Target Stores, Inc.*, 571 P.2d 1236, 1240–41 (Okla.App.1977) ("Exemplary damages may be awarded against Target for the act of his [sic] agent even though the principal did not personally participate in or ratify the act.").

6. *See also Mistletoe Express Service, Inc. v. Culp*, 353 P.2d 9, 13 (Okla.1960) (employer was directly liable for its own negligence in employing agent when it knew or should have known that agent had violent temper).

F.2d at 979. The insurer is in the best position to see to it that the damages are allocated; therefore, it should be given the incentive to do so.

██ Because CNA controlled Magnum's defense in the state litigation, CNA bears the burden of demonstrating the basis of the jury's punitive damage award. If it were impossible to determine on what basis the jury made its award, the damages would be presumed to be covered. *See id.* at 979–80. There is no such uncertainty here, however. As the district judge stated, "[B]oth the verdict forms, as well as the jury instructions, clearly reflect Magnum was found liable and that Magnum's liability was not vicarious." Order, March 26, 1992, at 7.

██ In determining whether the jury's punitive damages award could only have been based on a direct liability theory, we must carefully examine the totality of the instructions given. *Commercial Union Ins. Co. v. Ramada Hotel Operating Co.*, 852 F.2d 298, 302 (7th Cir.1988). Our task is made somewhat more difficult by the fact that Magnum is a corporation. Since a corporation is only a legal entity, it cannot act or have a mental state by itself. *See* Fletcher Cyclopedia of the Law of Private Corporations § 4877 (Perm.Ed.). It can only act through its officers and employees, and these acts are attributed to the corporation under basic principles of agency. When a corporation itself has a duty, like the nondelegable duty not to hire or retain dangerous employees, and breaches that duty through the acts or omissions of its employees, it is held *directly* liable for that negligence. In contrast, the doctrine of respondeat superior holds a corporation, as employer, liable for the torts of its employees acting in the course or scope of employment. *Handy v. City of Lawton*, 835 P.2d 870, 873 (Okla.1992) (ruling that employer is liable for harm inflicted while the agent is acting within the scope of employment and the act is an incident of the employee's service to the principal). In other

words, under respondeat superior, a blameless corporation may be held liable for the torts of its employees committed while acting within the scope of their employment as an incident of their work.[7] We must determine which type of liability was imposed here in the state court in awarding punitive damages.

The only tort instructions given the jury concerned the tort of negligent hiring and retention. The jury was instructed in general terms that:

> an employer has the duty to use due care to avoid the selection and retention of an employee [when] it knows or should know he would endanger fellow employees on the job. This duty requires the employer to make reasonable inquiry and investigation into an employee's character and background both prior and subsequent to his employment.

Appellant Magnum's App. Vol. I at 294 (Instruction No. 12). The jury was instructed more specifically on the elements of the tort:

> In order for the Plaintiffs to prevail upon their claim that the Defendant, Magnum Foods, Inc. negligently hired or retained James Martina as an employee, you must find that the Plaintiffs have proven all of the following by a preponderance of the evidence:
>
> 1. That James Martina was an employee of the Defendant, Magnum Foods, Inc.;
>
> 2. That *Defendant, Magnum Foods, Inc., owed a duty* to the Plaintiffs to keep the work environment safe from the danger of injurious conduct;
>
> 3. That *Defendant, Magnum Foods, Inc., breached that duty by negligently hiring or retaining James Martina* when it knew or should have known that he had the propensity to engage in injurious conduct toward employees.
>
> 4. That Plaintiffs sustained some injuries as a result of the negligence; and
>
> 5. That *the negligence of Defendant Magnum Foods, Inc. in hiring, retaining*

---

**7.** *Compare Missouri, Kansas & Texas R.R. Co. v. Stanley,* 372 P.2d 852, 857 (Okla.1962) (in action predicated solely on respondeat superior, a verdict favoring the servant exonerates the master from all liability) *with King's Van & Storage Co.*

*v. Criner,* 301 P.2d 1015, 1019–20 (Okla.1956) (in action predicated on employer's negligence, verdict in favor of the servant does not exonerate the master from its own negligence in failing to perform nondelegable duty).

**1500**

*or supervising James Martina* as an employee was a cause of the injuries claimed by the Plaintiffs herein.

*Id.* at 293 (Instruction No. 11) (emphasis added).

 It is important to note that the tort of negligent hiring and retention is based on the principle that a person conducting an activity through employees is subject to liability for harm resulting from negligent conduct "in the employment of improper persons or instrumentalities in work involving risk of harm to others." *Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316, 1320 (Colo.1992) (quoting Restatement (Second) of Agency § 213(b) (1958)). The duty to hire employees who are competent and not dangerous is, by its very nature, a duty of a master or employer, and this duty is nondelegable. *See* Restatement (Second) of Agency §§ 492 & 505 (among master's nondelegable duties is the general duty to provide safe working conditions for his servants, which includes providing competent fellow ser-

vants).[8] Thus, the liability of an employer for the negligent supervision or hiring of an unfit employee is "an entirely separate and distinct basis from the liability of an employer under the doctrine of respondeat superior." *Mainella v. Staff Builders Indus. Servs., Inc.*, 608 A.2d 1141, 1145 (R.I.1992).[9]

 The jury instructions in the state trial allowed the jury to consider the evidence presented as to "what businesses such as the defendant" do in investigating the background and qualifications of prospective employees, in order to determine "the corporate Defendants' [sic] negligence or lack thereof." Appellant Magnum's App. at 295 (Instruction No. 13). Because Magnum is a corporation, which as we noted above, can only act through its employees, the jury was further instructed that: "knowledge possessed by any management personnel of Magnum Foods, Inc., while acting within the scope of his [sic] authority, is the knowledge of, or notice to, his principal, Magnum Foods, Inc.," [10] and that "[a]ny act or omission of an

**8.** "There are certain nondelegable duties and responsibilities for which the corporation is held directly liable, regardless of who, in fact, performs them, one of which is the duty to provide its employees with a safe place to work." Fletcher Cyclopedia of Corporations § 4906 (Perm.Ed.) (citing *Missouri Valley, Inc. v. Putnam*, 627 S.W.2d 829, 832 (Tex.App.1982) ( [T]he corporation owes to its employees certain absolute or nondelegable duties and, even if the duties are delegated, the corporation itself remains responsible for the manner of their performance."), and *Rainbow Exp., Inc. v. Unkenholz*, 780 S.W.2d 427 (Tex.App.1989) (holding that managerial employee responsible for truck maintenance was engaging in performance of "indisputably" nondelegable duty)). *See also Nigg v. Patterson*, 276 Cal.Rptr. 587 (1991) (employer retains duty to select competent and fit employees at all times; referral of troubled juvenile to employer by agency as part of rehabilitation program did not abrogate this duty).

**9.** "Most jurisdictions ... recognize that independent of the doctrine of respondeat superior, an employer is liable for the willful tort of his employee committed against a third person if he knew or should have known that the employee was a threat to others." *Island City Flying Serv. v. General Elec. Credit Corp.*, 585 So.2d 274, 276 (Fla.1991). *See also Bryant v. Livigni*, 250 Ill. App.3d 303, 188 Ill.Dec. 925, 932, 619 N.E.2d 550, 557 (1993), *appeal denied*, 154 Ill.2d 557, 197 Ill.Dec. 483, 631 N.E.2d 705 (1994) (The principle at issue [in wrongful hiring or retention cases] is not respondeat superior, although that

may also be implicated. Rather, the cause of action is premised upon the wrongful conduct of the employer itself.); *Connes*, 831 P.2d at 1320–21 (citing cases); *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570 (Mo.Ct.App.1983) ("... [A]n employer may be *directly liable* for negligent hiring or negligent retention of an employee where the employer knew or should have known of the employee's dangerous proclivities and the employer's negligence was the proximate cause of the plaintiff's injury. Negligent hiring or retention liability is independent of respondeat superior liability for negligent acts of an employee acting within the scope of his employment.") (emphasis added); *Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508, 515 (1982) ("The wrong here redressed is negligence of the employer in the hiring or retention of employees whose qualities unreasonably expose the public to a risk of harm.")

**10.** The dissent argues that this instruction improperly injected notions of respondeat superior liability into the case and erroneously permitted the jury to impute knowledge to Magnum based on knowledge obtained by management level employees who were not "officer[s] or director[s]" of the corporation. Dissent at 1510–11. Not only do such objections to the state court jury instructions come too late in the context of this collateral declaratory action for indemnity (*infra*); they also blur the distinction between the respondeat superior doctrine and principles of imputed knowledge.

officer or employee while acting within the scope of his employment or authority is the act or omission of the Defendant corporation." *Id.* at 296–97 (Instruction Nos. 14 & 15).[11] All of these instructions indicate that it was *Magnum's* own negligence, by violating its nondelegable duty by its hiring and retention of Martina, that provided the basis for the punitive liability imposed by the state court jury, and not respondeat superior for the liability of its employees.

Perhaps most importantly, the trial judge instructed the jury that

> If you find in favor of the Plaintiffs ... and grant them actual damages, *and if you*

*find the conduct of the Defendant, Magnum Foods, Inc.* was or amounted to:

> Fraud;
>
> Oppression;
>
> Gross Negligence;
>
> Malice (actual or presumed);
>
> Evil intent;
>
> Reckless and wanton disregard of another's rights;

as defined herein, then you may, in addition to actual damages, grant Plaintiffs exemplary damages in such sum as you reasonably believe *will punish Defendant, Magnum Foods, Inc.* and be an example to others.

As we have already discussed, *supra* at p. 1500 and fn. 9, the cause of action for wrongful hiring or retention is bottomed on wrongdoing by a *corporation itself and thus results in direct cor*porate liability, not respondeat superior liability. Nonetheless, in such cases of direct corporate liability, knowledge may be imputed to a corporate employer from information obtained by its supervisory employees and agents—including *but not limited to* officers and directors—in the course and scope of their employment. *Tidal Oil Co. v. Forcum*, 189 Okl. 268, 116 P.2d 572, 575 (1941) (district superintendent's knowledge of "vicious nature of [dangerous instrumentality] was the knowledge of the corporation" and thus sufficient to hold corporation directly liable for "*wrongful keeping of the dog with knowledge of* its vicious disposition"; "[t]he best test of imputation of knowledge is not whether the agent, whose knowledge is sought to be attributed to the corporation, is the president, treasurer, etc., but whether the condition and facts known were within the sphere of the authority of the particular agent"); *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653, 662–63 (1984) (master potentially liable for wrongful retention of incompetent servant "'whether the master's knowledge of the servant's incompetency was actual, or direct, or constructive'") (quoting 57 C.J.S., *Master & Servant* § 559); *Bryant*, 188 Ill.Dec. at 931, 619 N.E.2d at 556 (agent's knowledge concerning fellow employee's dangerous propensities is "chargeable to the corporation if the information concerns a matter within the scope of the agent's authority"); *cf. Restatement (Second) of Torts* § 909(b) (1979) (punitive damages may be awarded against master if "agent was unfit and the principal *or a managerial agent* was reckless in employing or retaining him") (emphasis added).

We must keep in mind that the instant case only involves Magnum's attempt, in this collateral action, to shift to its insurer its own liability for damages awarded against it in the state court judgment, which has long been final. We are not to decide here whether the evidence in that proceeding was sufficient to support the judg-

ment against Magnum on the negligent hiring, retention, or supervision claim. Instead, we are considering what happened in the state court merely to ascertain the nature of the liability imposed there because that is important in determining whether, in light of *Dayton Hudson's* clear restrictions on insuring against punitive damages, Magnum may shift such liability to CNA, either pursuant to the CNA policy or through a claim of bad faith refusal to settle.

11. In support of its claim that the jury was instructed on the theory of respondeat superior, Magnum states in its Brief in Chief at 7, n. 3 that Instruction 15.1 was a "verbatim recitation" of Oklahoma Uniform Jury Instruction 7.2. We disagree. Instruction 15.1 states that

> Linda Rogers, Terry Duckworth, Mark Conover and Bob Bealmer were the employees of the Defendant, Magnum Foods, Inc., *in regard to the hiring, retention and supervision of defendant James Martina.* Therefore, an act or omission of Linda Rogers, Terry Duckworth, Mark Conover or Bob Bealmer within the scope of their employment at the time was in law the act or omission of the Defendant, Magnum Foods, Inc.

Appellant Magnum's App. Vol. I at 298 (Instruction No. 15.1) (emphasis added). The underlined phrase was added. *Cf.* OUJI–CIV No. 7.2. Although this instruction is found in the chapter of the jury instructions entitled Respondeat Superior, this fact is not dispositive. We do not find that point particularly persuasive in light of the fact that that chapter contains virtually all the instructions concerning corporate liability, not all of which would be based on the principle of respondeat superior. The additional phrase makes clear that this instruction simply explains what the corporation's acts were in regard to the hiring, retention, and supervision of Martina. If these employees' acts were the acts of the corporation, then *the corporation* was being found to have acted negligently in violation of its nondelegable duty.

Exemplary damages are not to be construed as compensation to the Plaintiffs, but *as punishment to the Defendant, Magnum Foods, Inc.*, and as an example to others to deter them from like conduct.

In no event should the exemplary damages exceed the amount of actual damages, if any, which you award to the Plaintiffs. *Id.* at 305 (Instruction No. 22) (emphasis added).

This instruction puts the question of whether Magnum's liability was direct in the proper perspective because it shows that what is involved here is the attempted shifting of punitive liability to an insurer for conduct involving wrongdoing of Magnum itself, which was asserted as the tort of negligent hiring, retention and supervision. This instruction told the state jury that if they found for the plaintiffs and gave them actual damages, then there could be punitive damages awarded against Magnum in certain circumstances, namely if *its conduct* amounted to "fraud; oppression; gross negligence; ... [or] [r]eckless and wanton disregard of another's rights."

On the basis of these instructions, the jury returned verdict forms finding that the *"acts, errors, and/or omissions, of the Defendant, Magnum Foods, Inc. were wanton, willful, malicious, and/or grossly negligent."* *Id.* at 153 (Green Verdict Form) (emphasis added). In light of the jury instructions and the jury's answer on the verdict forms, it is clear that the case comes squarely within the *Dayton Hudson* rule against insurance coverage of punitive damages and that the district judge was correct in concluding that "the jury in the state court action found Magnum liable for its direct acts in connection with the injuries which occurred." Order at 7 (March 26, 1992). *See Dayton Hudson*, 621

P.2d at 1161 (when recovery is rested on employer's prior knowledge of servant's propensity to commit the very harm for which liability is imposed, "the basis of liability is not *respondeat superior* but rather the employer's *own negligence* in not discharging the unfit servant." (emphasis in original)).

We therefore affirm the partial summary judgment for CNA holding that Magnum's punitive liability, determined by the state court jury, may not be imposed on CNA as part of CNA's obligation under the insurance policies.[12]

### III

### Denial of Judgment as a Matter of Law on the Bad Faith Claim

CNA contends that the federal district court erred in denying its motion for a directed verdict and for judgment notwithstanding the verdict on Magnum's bad faith claim. CNA advances three grounds of error: (1) an insurer's duty to act in good faith in attempting to settle claims against its insured are only triggered by the substantial possibility of a judgment in excess of liability limits, and not by a claim for uninsurable punitive damages; (2) CNA's bona fide belief in the merits of Magnum's defense to the state court claim precludes a finding of bad faith; and (3) Magnum failed to establish a prima facie case of bad faith. We address each argument in turn and conclude that CNA was not entitled to judgment as a matter of law. However, because Magnum's judgment on the bad faith claim was improperly based on proof that included the $600,-000 paid to settle the state court punitive award against Magnum, CNA is entitled to a new trial.[13]

---

**12.** Magnum has improperly attempted to supplement the record by attaching as Appendix C to its Reply Brief a portion of the transcript from the trial of the bad faith claim. Although this court may appropriately take judicial notice of developments that are a matter of public record and are relevant to the appeal, *Clemmons v. Bohannon*, 918 F.2d 858, 865 (10th Cir.1990), our review of a grant of summary judgment is limited to the record before the trial court at the time it made its ruling. *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1548 n. 1 (10th Cir. 1992). *See also Allen v. Minnstar, Inc.*, 8 F.3d

1470, 1475 n. 4 (10th Cir.1993) (citing cases). Appendix C to Magnum's Reply Brief and all references to it will be stricken; those materials have played no part in our consideration of that issue.

**13.** As we have held, "[i]n an appeal from the denial of a motion for a judgment notwithstanding the verdict an appellate court may, in appropriate circumstances, instead order a new trial." *Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471, 1480 (10th Cir.1985) (citing *Neely v. Mar-*

We review the district court's denial of a judgment as a matter of law de novo. *Johnson v. Thompson,* 971 F.2d 1487, 1495 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). Accordingly, we must determine whether there is evidence upon which the jury could properly find a verdict for the party against whom the motion is directed. *Rajala v. Allied Corp.,* 919 F.2d 610, 615 (10th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991). We must construe the evidence and inferences most favorably to the nonmoving party, and refrain from weighing the evidence, passing on the credibility of witnesses, or substituting our judgment for that of the jury. *Brown v. Wal-Mart Stores, Inc.,* 11 F.3d 1559, 1562 (10th Cir.1993) (citations omitted). Although federal law dictates whether a judgment as a matter of law is appropriate, *Brown v. McGraw-Edison Co.,* 736 F.2d 609, 613 (10th Cir.1984), in a diversity case we examine the evidence in terms of the underlying burden of proof as dictated by state law. *See Rajala,* 919 F.2d at 615.

### A.

CNA first argues that it was entitled to judgment as a matter of law because the duty to act in good faith in considering reasonable settlement offers is only triggered by the substantial possibility of a judgment in excess of the contractual policy limit. Since the state case "never presented any possibility of a judgment in excess" of Magnum's $6 million policy limits, but instead involved a risk of uninsurable punitive damages, CNA argues that it never had a duty to protect its

---

tin *K. Eby Const. Co.,* 386 U.S. 317, 329, 87 S.Ct. 1072, 1080, 18 L.Ed.2d 75 (1967); *Jones v. Dodson,* 727 F.2d 1329, 1339 (4th Cir.1984) (citing *Neely* and concluding that "appellate court, on appeal from denial of motion for judgment n.o.v., may, consistent with Fed.R.Civ.P. 50, grant new trial as alternative to judgment n.o.v.").

These arguments, based on the Oklahoma policy against shifting punitive liability to an insurer, were raised below in CNA's motion for directed verdict and its motion for judgment n.o.v. or alternatively for a new trial. There, CNA argued that it was entitled to judgment as a matter of law on the ground that it had no duty to settle the uninsurable punitive damages claim against

---

insured from such exposure. According to CNA, if an insurer were obliged to settle a case in which there was a claim for punitive damages that by law cannot be insured, the effect would be to shift to the insurer the burden of punitive damages, in clear violation of Oklahoma public policy.[14]

Magnum responds by arguing, in essence, that an insurer's duty of good faith is inherent in the relationship between insurer and insured, and that this duty does not simply evaporate whenever a claim for uninsurable punitive damages is made against the insured. The same considerations that give rise to the insurer's duty of good faith in the typical excess liability case are, in Magnum's view, equally present here where there is a claim for punitive damages.

We agree with Magnum that the mere presence of a claim for uninsurable punitive damages does not abrogate an insurer's obligation to act in good faith towards its insured. However, what conduct good faith requires of an insurer in these circumstances differs from the conduct good faith requires in a contractual excess liability case. Because this case was tried and damages were awarded on the assumption that CNA was obligated to treat the claim for punitive damages as if it were a claim for damages in excess of policy limits, and because the compensatory damages award on the bad faith claim was based on proof that included the $600,000 Magnum paid to settle the punitive portion of the state court judgment, we must reverse the judgment entered on the bad faith claim in this federal suit and remand for a new trial.

Magnum, and, in the alternative, that it was entitled to a new trial because at trial it had been held to have such a duty. Appellant CNA's App. Vol. I at 240–248. *Because we believe that CNA would not be entitled to judgment as a matter of law, we find it necessary to remand for a new trial.*

*If the jury at the new trial finds that the insurer's conduct violated its duty of good faith to its insured, then the insured may be awarded compensatory damages and, if the proof is sufficient under the Oklahoma standard, punitive damages. See Christian v. American Home Assurance Co.,* 577 P.2d 899, 904 (Okla.1978).

**14.** Brief of the Appellants (CNA) at 8–9, 12.

### 1.

First, we must consider the duty of an insurer, like CNA, to its insured, like Magnum, where there is an exposure of the insured to a punitive damage liability which, by public policy of the state, may not be covered by insurance. In the more typical excess liability case, Oklahoma law places "a very great duty" upon an insurer to determine whether litigation against its insured should be settled when it can be within policy limits. *Hazelrigg v. American Fidelity & Cas. Co.*, 241 F.2d 871, 873 (10th Cir.1957) (citing *National Mut. & Cas. Co. v. Britt*, 203 Okl. 175, 200 P.2d 407 (1948)). An insurer's obligation to negotiate settlements honestly and fairly arises from contract, 7C Appleman, Insurance Law and Practice, p. 381 § 4711, and also from the right to control the insured's defense. *Moore v. United States Fidelity & Guaranty Co.*, 325 F.2d 972, 974 (10th Cir.1963). As we stated in *Moore:*

> It is a well established rule in Oklahoma, followed in this Circuit, that the right of an insurer to control litigation under public liability policies of this kind, "... carries with it the correlative duty to exercise diligence, good faith, honest and conscientious fidelity *to the common interest of the parties.*" *Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co.*, 129 F.2d 621, 627 (10th Cir.1942).

*Id.* (emphasis added).

We have also explained, in the context of a case presenting a risk of excess liability, that when the insurance company obtains from the insured the power to determine whether an offer of compromise within the policy limits shall be accepted or rejected, this

> creates a fiduciary relationship between [the insurer] and the insured with the resulting duties that grow out of such a relationship. Under policies like those here involved, the insurer and the insured owe to each other the duty to exercise the utmost good faith. While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own in-

terests, *it must, in good faith, give at least equal consideration to the interests of the insured and if it fails to do so it acts in bad faith.*

*American Fidelity & Cas. Co. v. G.A. Nichols Co.*, 173 F.2d 830, 832 (10th Cir.1949) (applying Oklahoma law) (emphasis added).

This "equal consideration" requirement mediates the conflict of interest that arises between the insurer and the insured in the face of a possible judgment in excess of policy limits. The insured's interest will almost always favor settlement, even up to policy limits, since the insured has nothing to gain and much to lose by litigating rather than settling.[15] Conversely, if the claimant's settlement demand is close to the policy limits, the insurer will be inclined to go to trial, since doing so will not expose it to liability greater than the cost to settle the case. The "equal consideration" requirement prohibits the insurer from taking a gamble that only its insured stands to lose. *See Allen v. Allstate Ins. Co.*, 656 F.2d 487, 490 (9th Cir. 1981). In order to avoid such a result, an insurer that breaches its duty to consider settlement offers in good faith may be held liable for the entire judgment obtained against the insured, regardless of policy limitations. *American Fidelity & Cas. Co. v. L.C. Jones Trucking*, 321 P.2d 685, 687 (Okl. 1957); *American Fidelity & Cas. Co. v. All American Bus Lines*, 190 F.2d 234, 238 (10th Cir.1951). In this way, the insurer is prevented from frustrating the purpose of insurance "by a cavalier and selfish refusal to settle" which exposes the insured to liability beyond the specific monetary protection that his premium has purchased. 7C Appleman, § 4711, p. 395.

However, when the risk to the insured is not from an excess judgment but from exposure to uninsurable punitive damages, the situation is different in one important respect. As the New York Court of Appeals recently stated, where an insurer has acted in bad faith in relation to an available pretrial

---

**15.** Robert E. Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv.L.Rev. 1136, 1142 (1954).

settlement opportunity in a suit claiming uninsurable punitive damages, the insurer is guilty only of placing its insured at risk that a jury will deem him or her so morally culpable as to warrant the imposition of punitive damages. Stated another way, an insurer's failure to agree to a settlement, whether reasonable or wrongful, does no more than deprive the insured of a chance to avoid the possibility of having to suffer a punitive damage award for his or her own misconduct. Regardless of how egregious the insurer's conduct has been, the fact remains that any award of punitive damages that might ensue is still directly attributable to the insured's own immoral and blameworthy behavior.

*Soto v. State Farm Ins. Co.*, 83 N.Y.2d 718, 613 N.Y.S.2d 352, 355, 635 N.E.2d 1222, 1225 (1994), *aff'g*, 195 A.D.2d 992, 600 N.Y.S.2d 407 (1993) *and*, 155 Misc.2d 447, 588 N.Y.S.2d 505 (Sup.Ct.1992).

CNA relies on *Soto* in support of its contention that an insurer does not have a duty to settle when the insured's only potential exposure is to an uninsurable punitive damages claim.[16] In *Soto* the trial court dismissed, for failure to state a claim, the plaintiff's complaint alleging bad faith failure to settle, where the insurer refused to settle before trial and left the insured exposed to a punitive damages claim that was uninsurable under New York law (as it would have been under Oklahoma law). The trial resulted in a judgment against the insured for punitive damages. The insured then assigned his rights to the plaintiff, who sued State Farm. The plaintiff claimed that State Farm should be liable for the amount of punitive damages because its refusal to settle was in bad faith. The insurer moved to dismiss on the ground that the compensatory award had been fully paid and the only remaining basis for relief was the punitive award. The trial court relied on "the well established New York policy against indemnification for punitive damages," and held that in New York a cause of action does not exist for the recovery of punitive damages from an insurance carrier

due to a bad faith failure to settle a claim within policy limits. 588 N.Y.S.2d at 507. The Appellate Division affirmed, and the New York Court of Appeals upheld the Appellate Division's ruling. The Court of Appeals noted that while the relief sought on such a bad faith claim is more in the nature of compensation for a tort, rather than indemnification under an insurance policy, "the nature of the underlying reason for recovery, *i.e.*, a civil punitive damage award, cannot be ignored." *Soto*, 613 N.Y.S.2d at 354, 635 N.E.2d at 1224. The Court concluded:

> [W]e hold that the punitive damages awarded against an insured in a civil suit are not a proper element of the compensatory damages recoverable in a suit against an insurer for a bad faith refusal to settle. . . .

613 N.Y.S.2d at 355, 635 N.E.2d at 1225.

The Ninth Circuit reached a similar result in *Zieman Mfg. Co. v. St. Paul Fire & Marine Ins. Co.*, 724 F.2d 1343 (9th Cir. 1983). There the insured alleged that St. Paul acted in bad faith in failing to settle a products liability suit against Zieman which left Zieman exposed to an uninsurable punitive damages claim. The Ninth Circuit rejected the insured's argument that settlement should have been made within policy limits because of the uninsured punitive exposure:

> The proposition that an insurer must settle, at any figure demanded within the policy limits, an action in which punitive damages are sought is nothing short of absurd. The practical effect of such a rule would be to pass on to the insurer the burden of punitive damages in clear violation of California statutes and public policy.

*Id.* at 1346.

We are persuaded by the *Soto* and *Zieman* opinions that potential exposure to uninsurable punitive damages does not present the same type of concerns as the conflict of interest that arises from potential exposure to an excess judgment. We agree that a risk that a wrongdoer will suffer the conse-

---

**16.** CNA's Reply Brief at 5–6 discusses the opinion of the *Soto* trial court. We consider it and the subsequent affirmances of that ruling.

quences of his own malfeasance is not one that may be shifted to an insurer. *See Dayton Hudson*, 621 P.2d at 1160.

However, we do not believe that this Oklahoma public policy insulates an insurer from a claim of bad faith in handling the entire case whenever a claim is made for uninsurable punitive damages. In *Ging v. American Liberty Ins. Co.*, 423 F.2d 115 (5th Cir.1970), the Fifth Circuit considered the duties of an insurance carrier in such a situation, and concluded:

> Because an insurance company actually did undertake the complete defense of its insured to a suit seeking both compensatory and punitive damages, the company had the duty of acting in good faith toward its insured as to the entire undertaking. The court below erred in granting summary judgment based upon its premise that since the company owed no duty relative to punitive damages, it was free to act in bad faith toward its insured as to that element of the litigation. We reverse for a trial.

*Id.* at 116. In discussing *Northwestern Cas. Co. v. McNulty* (the case followed by the Oklahoma Supreme Court in *Dayton Hudson*), the Fifth Circuit said that:

> *McNulty* should not be read as declaring a rule that an insurer need *only* advise its insured that it will not pay any portion of a judgment assessed for punitive damage in order to be relieved from all further responsibility respecting the defense of that claim and from all corollary responsibilities which that duty to defend necessarily entails.

*Id.* at 120 (emphasis in original).

 As our court has frequently recognized, the duty to defend is distinct from, and broader than, the duty to indemnify. *Western Heritage Ins. Co. v. Chava Trucking, Inc.*, 991 F.2d 651, 656 (10th Cir.1993) (citing *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 619–20, 642 P.2d 604, 605–06 (1982)). When an insurer owes or undertakes the duty to defend its insured in a suit seeking both insured and uninsurable dam-

ages, it has the duty to conduct settlement negotiations in good faith as part of that defense. For one thing, this includes warning the insured of any potential exposure to him and apprising him of settlement opportunities within a reasonable time after they are presented. *Ging*, 423 F.2d at 120–21.

We hold that here, where both compensatory and uninsurable punitive damages are sought, and CNA assumed the defense of the entire suit under the obligations of the policies,[17] the presence of the punitive claim did not absolve CNA from its obligation of good faith in handling the entire case. That duty of good faith does not include settlement or a contribution to settlement by CNA of the uninsurable punitive claim. We are convinced, however, that CNA's duty of good faith included working cooperatively with Magnum throughout in both defending and attempting to settle the entire case, with fair consideration given to Magnum's concerns because of its exposure to the uninsured punitive claim. The good faith duty of CNA thus required cooperative efforts by CNA with Magnum throughout to handle and settle the entire case.

 Thus recognizing CNA's duties accommodates both fair implementation of the insurer's duty of good faith required by Oklahoma law, and also achieves compliance with the Oklahoma public policy against shifting punitive liability to an insurer. In addition to defining CNA's duties as outlined above, the jury should be instructed at the new trial, which we require, that the jury should not consider Magnum's payment of $600,000 to settle the state punitive damage judgment in determining any compensatory award on the bad faith claim, and the jury should be told that Oklahoma law prohibits shifting such a punitive liability to an insurance company. The jury should also be told that CNA's duty of good faith and cooperation with Magnum did not obligate CNA to make more than a reasonable payment to settle the covered compensatory damages liability to avoid the uninsurable punitive exposure of Magnum.

---

**17.** CNA did, however, issue a reservation of rights letter notifying Magnum of the lack of coverage for the punitive claim.

## 2.

■ We turn next to the question whether, considering CNA's good faith duty here, the federal trial judge erred in denying CNA's motions for a directed verdict and for judgment n.o.v. on Magnum's claim of bad faith against CNA. We are convinced that the judge did not err in those rulings. Magnum's evidence of bad faith included the following: CNA's local claims adjuster, Greg Barta, recommended that CNA treat the plaintiffs' claim as if it were merely a sex discrimination case for settlement purposes.[18] Nevertheless, he estimated only a 55% chance of securing a defense verdict in the state case.[19] As the case moved closer to trial, the evidence available to CNA indicated that the case was more dangerous than it had initially appeared, but CNA failed to take these developments into account. For example, several potential defenses "fell by the wayside" and the victim turned out to make a very good witness.[20] The senior claims analyst who evaluated the plaintiffs' claim to determine what amount to offer at the court-ordered mediation only received the file the day before, which gave her a short time in which to make her evaluation.[21] At the mediation, the plaintiffs lowered their settlement demand to $495,000, but CNA never offered more than $350,000, despite the recommendation of the attorney hired to defend Magnum that CNA settle for as much as $495,000.[22] In the days before trial, plaintiff's counsel expressed a willingness to return to mediation, but CNA refused.

When plaintiff's counsel reminded CNA's claims adjuster Barta of the potential for punitive damages, Barta said that he did not believe that the plaintiffs would get punitive damages, but if they did, "*that was Magnum Foods' and Little Caesar's problem.*"[23] The night before trial, Magnum's chief financial officer called one of the CNA adjusters working on the claim to try to find out who could extend greater settlement authority. When the Magnum officer expressed his concern that the jury was likely to give the plaintiff a lot of money, the CNA adjuster responded that "the question is *who has to give her a lot of money.*"[24]

We feel that the evidence as a whole supported a reasonable inference that CNA's conduct did not meet its good faith obligations to give fair consideration to Magnum's position in light of the uninsured punitive liability and to give good faith cooperation to Magnum in attempting to settle the entire case. Thus, CNA's motions for a directed verdict and for judgment n.o.v. on Magnum's bad faith claim were correctly denied.

■ However, in our view there was error in the compensatory damages award ($750,000) on the bad faith claim because it was based, *inter alia,* on consideration of the $600,000 amount that Magnum paid to settle the punitive damage award entered against it in the state court suit. This in effect shifted Magnum's punitive liability to the insurer which, in the circumstances of this case, violated Oklahoma public policy. *Dayton Hudson,* 621 P.2d at 1156; *Oliver v. Producers Gas Co.,* 798 P.2d 1090, 1091–92 (Okla.App. 1990). Accordingly we reverse and remand for a new trial on the bad faith claim at which Magnum may seek compensatory damages based on injury other than the $600,000 payment. This may compensate for alleged harm to Magnum's business and reputation proximately caused by CNA's alleged breach of its duty of good faith in its handling of the defense of the entire case and in its conduct in the settlement negotiations.

## B.

We turn now to additional arguments by CNA that denial of its motion for a directed verdict and for judgment n.o.v. on the bad

18. Appellant CNA's App.Vol.V at 90.

19. *Id.* at 100.

20. *Id.* at 91.

21. *Id.* at 100.

22. Appellant CNA's App. Vol. II at 142 & Vol. V at 28.

23. Appellant CNA's App. Vol. II at 324–25 (emphasis added).

24. Appellant CNA's App. Vol. V at 128 (emphasis added).

faith claim was error. CNA says that it had a bona fide belief in the merits of Magnum's defense to the negligent hiring and retention claim in state court which precludes a finding of bad faith. Magnum responds that "[a]ny belief entertained by CNA that it could successfully defend the cause of action must have sprung from an optimism unrelated to the realities of the situation." [25]

■■■■ We believe that where, as here, there is a substantial risk of a large verdict for which the insured will be held liable, an insurer may not refuse to cooperate with its insured in settling the claims merely because the insurer has an honest belief in its ability to defend the insured. As a professional in the defense of such cases, the insurer who undertakes the defense of its insured must use a degree of skill commensurate with such professional standards. Appleman, § 4711, p. 382. The insurer must exercise "diligence, intelligence, good faith, honest and conscientious fidelity *to the common interest of the parties.*" *Moore,* 325 F.2d at 974 (citation omitted) (emphasis added). The parties have a common interest in settling the law suit if they can do so for less than it would cost them if the case went to trial. Even in situations where the insurer will only have to indemnify the insured for a portion of the judgment rendered against it, good faith requires that neither party act in such a way as to deprive the other of the benefits of the agreement. *Christian,* 577 P.2d at 904. If an insurer fails to act cooperatively to reach a settlement—for example, by refusing to make a reasonable offer to settle at least the insured portion of the claim—then the insurer's conduct may be reasonably perceived as tortious, and the trial court may submit the issue of bad faith to the jury. *See City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.,* 804 P.2d 463, 468–69 (Okl.App.1990).

We believe that Magnum's evidence of bad faith, discussed in Part III–A above, provided adequate grounds on which a jury could reasonably find that CNA's actions did not demonstrate good faith cooperation with its insured. Therefore, the trial court properly determined that CNA was not entitled to judgment as a matter of law on this ground.

### C.

■■■ Finally, CNA argues that Magnum failed to establish even a prima facie case of bad faith. In support of its argument it reviews the merits of Magnum's defense in the state case. Where the previous argument addresses the *bona fides* of CNA's belief in Magnum's defenses, this argument addresses the reasonableness of that belief. For similar reasons we conclude that, given the strength of the plaintiffs' case in state court, CNA was not entitled to judgment as a matter of law on this ground.

The evidence available to CNA leading up to the state trial showed that the sixteen-year-old girl was raped and sodomized by her supervisor at work; that he had repeatedly sexually harassed her and other employees under his supervision by propositioning them for sex and making lewd comments to them; that his conduct was reported to store managers who reported it to their supervisors; that customers had complained about him; that store managers believed he had lied to them; that he had two prior convictions; but that managers for Magnum failed to suspend or fire him, and in doing so violated the company's written policy against sexual harassment.

In view of these facts, together with probable jury sympathy for the victim, the case against Magnum was strong. On the basis of the record as a whole we hold that there was sufficient evidence from which the jury could conclude that the conduct of CNA in handling the entire case and in the settlement negotiations demonstrated bad faith. Again the federal district court properly denied CNA's motions for judgment as a matter of law.

### IV

#### Damages

■■■ CNA appeals the award to Magnum of compensatory and punitive damages. One

---

**25.** Brief of the Appellee (Magnum) at 29 (citing *Royal Transit v. Central Sur. & Ins. Corp.,* 168 F.2d 345, 347 (7th Cir.), *cert. denied,* 335 U.S. 844, 69 S.Ct. 68, 93 L.Ed. 395 (1948)).

alternative argument of CNA is that the evidence was legally insufficient to support any damages in excess of the $600,000 Magnum paid to settle the punitive portion of the state court judgment.[26] We disagree. The record reveals that there was considerable evidence presented to support a finding of injury that resulted from CNA's actions relating to settlement.[27] Even without consideration of the $600,000 paid in settlement, there was adequate evidence to submit the compensatory damage issue to the jury and that evidence may be presented at the new trial. Whether there is sufficient evidence to justify submission of the claim for punitive damages to the jury is a matter that must be determined by the district judge in the course of the new trial. We express no opinion on the propriety of the district judge's submission of the punitive damage claim at trial below, or on her lifting of the cap provided by 23 O.S. § 9(A).

# V

## Attorney Fees

CNA also challenges the award of attorney fees in this federal bad faith action. Since we are reversing the judgment for Magnum on the federal bad faith claim, the present award of attorney fees must be reversed and that issue is also remanded for a new trial. However, there is a legal issue concerning one portion of the fees awarded which will likely arise again and we will therefore dispose of that question. This question concerns the recoverability of the portion of the fees incurred in the underlying state court action by Magnum for its separate counsel for services in that suit. Magnum says that it is entitled to such fees under the Oklahoma Insurance Code, 36 O.S. § 3629(B). CNA contends that such fees in the underlying action are not recoverable under the statute.

We must agree with CNA. Under Oklahoma law, attorney fees are not recoverable as damages unless they are specifically provided for by contract or statute. *Security Ins. Co. v. White*, 236 F.2d 215, 220 (10th Cir.1956); *Halliburton Oil Producing Co. v. Aetna Ins. Co.*, 491 F.Supp. 595, 596–97 (W.D.Okla.1978). Magnum has not asserted any entitlement to attorney fees incurred in the underlying action under its contract of insurance with CNA; the only basis advanced for recovery of such fees is the Oklahoma statute. *See Davis v. National Pioneer Ins. Co.*, 515 P.2d 580, 584 (Okl. App.1973). Magnum's brief states that "Magnum did not seek fees under the indemnity agreement but relied, instead, on 36 O.S. § 3629." Brief of Appellee at 46 (Nos. 92–6344 and 92–6355).

36 O.S. § 3629(B), provides in pertinent part:

> B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party.

Section 3629 creates an exception to the American Rule by providing for an "award of attorney fees to the prevailing party *in a suit by an insured against the insurer....*" *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 586 (Okla.1981) (emphasis added). Section 3629(B) "allows fees *for time spent preparing and trying a claim of bad faith*, provided the plaintiff succeeds on his claim of bad faith and also meets the statutory requirement of obtaining a total judgment larg-

---

**26.** In its Brief of the Appellants at 49, CNA prays that the judgment in the bad faith action be reversed, or that it be modified. This alternative disposition suggested would apparently mean setting aside the portion of the compensatory judgment in excess of the $600,000 payment made by Magnum to settle the state court punitive judgment for $750,000.

**27.** The jury below heard testimony from Jeffrey Welch, the president of Magnum, that the trial and accompanying publicity hurt employee morale, harmed the company's reputation in the community, and interfered with the promotion of the opening of Magnum's fiftieth store. Appellant CNA's App. Vol. III at 875–880.

er than the greatest settlement offer made by the insurer." *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1464 (10th Cir.1989) (emphasis added). The disputed fees to which CNA objects are fees incurred in the suit by the rape victim and her parents against Magnum in the state court, not in the instant suit by Magnum against CNA. Therefore, we agree with CNA that fees and expenses incurred in the underlying state court case are not recoverable under § 3629(B) because they are not fees incurred in a suit by an insured against the insurer.

Therefore, we conclude that fees incurred in the underlying state court action are not recoverable under 36 O.S. 3629(B). There has been some discussion of recoverability of such fees as a part of damages on the bad faith claim, but Magnum has not asserted such a position before us and we do not pass on that question. On remand, if Magnum prevails on its bad faith claim against CNA and is found to be entitled to attorney fees, as we have held above any part of the fees incurred in the state court action may not be awarded under § 3629(B).

## VI

### Conclusion

Accordingly we **AFFIRM** the district court's grant of partial summary judgment in favor of CNA in the declaratory judgment action (No. 92–6148). We **REVERSE** the judgment of the district court in favor of Magnum on its bad faith claim against CNA (No. 92–6344). We **AFFIRM** the district court's denial of CNA's motion for a directed verdict on the bad faith claim and the court's September 30, 1992, order insofar as it denied CNA's motion for judgment n.o.v.; we **REVERSE** that order insofar as it denied CNA's motion for a new trial and awarded Magnum its attorney fees for services in the state court action; we **VACATE** the remaining portions of that order, including the remaining award of fees and costs, and the denial of prejudgment interest (No. 92–6355); and we **REMAND** those matters, including the entire claim for attorney fees and costs with the bad faith claim for further proceedings consistent with this opinion.

PAUL KELLY, Jr., Circuit Judge, dissenting.

The court decides that Magnum's punitive liability is nondelegable, is consequently direct and therefore not recoverable from CNA and that Magnum's exposure to punitive damages may not be considered as damages flowing from a breach of the duty of good faith. I respectfully dissent.

### I. Insurance Coverage of Punitive Damages

Magnum as a corporation is responsible for breach of a nondelegable duty. However, the assumption that such a breach, under any and all circumstances, is evidence of its *"own negligence"* and "positive wrongdoing" as required under *Dayton Hudson Corp. v. American Mut. Liab. Ins.*, 621 P.2d 1155. 1160 (Okla.1980), is an erroneous confusion of responsibility with culpability.

A breach of a nondelegable duty sometimes results in vicarious liability because an employer or owner lacked actual knowledge of the wrongdoing—although it could not escape liability for the tortious acts. Even where an employer has actual knowledge of circumstances which could give rise to wrongdoing and is deemed negligent, Oklahoma still would allow insurance coverage of resultant punitive damages, provided the employer's knowledge resulted in ordinary, rather than gross, negligence. *Id.* at 1161.

Lack of actual knowledge concerning wrongdoing associated with a nondelegable duty has been held to result in vicarious liability when an independent contractor is at fault. For example, in *Willis v. Westin Hotel Co.*, 884 F.2d 1556 (2d Cir.1989), the Second Circuit stated: " 'Although [the owner] had a nondelegable duty to plaintiff to maintain and repair the elevator, unless [the owner] had actual notice of the malfunction, its liability was vicarious only.' " *Id.* at 1561 (quoting *Sirigiano v. Otis Elevator Co.*, 118 A.D.2d 920, 499 N.Y.S.2d 486, 488, *appeal denied*, 68 N.Y.2d 604, 506 N.Y.S.2d 1027, 497 N.E.2d 707 (1986)). The court explained, "the owner has 'imput[ed] to [it] the negligence of any delegate insofar as plaintiff's

rights to recover [a]re concerned, but only to that extent.'" *Id.* That is the situation here.

Similarly, in *Lessnau v. United States,* 979 F.2d 855, 1992 WL 344966 (9th Cir.1992), the Ninth Circuit characterized *Restatement (Second) of Torts* § 416 (1965) as "vicarious" and distinguished this nondelegable duty from that imposed by § 413 which it characterized as "direct." *Lessnau,* 1992 WL 344966, at *2. *See also Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 364 (5th Cir. 1980) (vessel owner's "absolute, continuing and non-delegable duty" to prevent unseaworthy conditions breached by a delegate imposes vicarious liability). Thus, even though duties are nondelegable, liability for their breach has no automatic characterization as "direct" because liability may arise vicariously.

For a bar to recovery of punitive damages, Oklahoma law requires knowledge "in fact" for a showing of the "employer's *own negligence,*" indeed "gross negligence ... the equivalent of positive wrongdoing," *Dayton Hudson,* 621 P.2d at 1161, and we cannot now escape this requirement by merely categorizing the duty as "nondelegable." A separate rule for corporations does not exist. An unequivocal showing of actual corporate knowledge should be the predicate for corporate liability in this case.

No record evidence suggests that any officer or director of Magnum "in fact" had knowledge of Mr. Martina's questionable activities. Magnum's president testified that the failure to document instances of sexual harassment is in violation of the written policies of the corporation. Linda Rogers, Martina's direct supervisor testified that she did not report her knowledge of certain sexual harassment charges made against him. She admitted that she violated corporate policy, thereby giving Martina the appearance of a first offender in his personnel file. Aplt.App. at 354–355. The jury instructions, however, allowed the jury to find corporate liability based upon her conduct in complete contravention of announced corporate policy.

The *Restatement (Second) of Torts* (1979) addresses the question of corporate culpability under these circumstances and makes a notable distinction. Section 909(b) allows punitive damages against a principal due to the acts of an agent where "the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him." While not specifying in the text whether these damages are the result of direct or vicarious liability, a comment recognizes that punitive damages may arise where "there has been no fault on the part of a corporation or other employer, if a person acting in a managerial capacity either does an outrageous act or approves of the act by a subordinate." *Id.* § 909, cmt. b.

The court emphasizes that under Oklahoma law, masters may be held liable in punitive damages for the torts of their servants under the doctrine of respondeat superior, regardless of whether there is ratification. *See* Ct.Op. at 1498 n. 5. This means only that for Magnum to be *responsible* in Oklahoma, it need have no actual knowledge. Undoubtedly, Magnum bears liability. *See Allen,* 623 F.2d at 364 (holding lack of knowledge is not an excuse for liability, but such liability is vicariously derived). The real question under Oklahoma law, though, is whether Magnum is *at fault,* and without actual knowledge, the answer must be "no."

The knowledge instruction given to the jury exacerbates this confusion between liability premised upon fault, as opposed to mere responsibility, because it imputes knowledge, which in itself is fully consistent with fault based upon respondeat superior. *See Black's Law Dictionary,* (6th ed. 1990) ("Imputed" defined as "attributed vicariously"). The pertinent instruction stated that "[k]nowledge, or notice possessed by any management personnel of Magnum Foods, Inc., while acting within the scope of his authority, is the knowledge of, or notice to, his principal, Magnum Foods, Inc." The jury was not required to find that the corporation itself had knowledge. Thus, any employee with the title "manager," including one without hiring or firing authority, could withhold her knowledge and render the corporation culpable under a negligent hiring, retention and supervision theory. *Cf. In the Matter of P & E Boat Rentals (Fusselman v. Ennia Gen'l Ins. Co., Inc.),* 872 F.2d 642, 652–53 (5th Cir.1989) (vacating punitive dam-

age award for outrageous conduct of company's foreman where company "policymaking officials" had no knowledge).

Despite this problem, the court concludes that the verdict for punitive damages against Magnum, in light of the other jury instructions, expresses the jury's determination that Magnum itself was grossly negligent, willful, wanton, fraudulent, oppressive, or malicious. Ct.Op. at 1499–1502. The court thus holds that insurance coverage for punitive damages must fall outside the umbrella of the second public policy exception, which allows recovery of punitive damages from an insurer if the principal's conduct was ordinary negligence. *See Dayton Hudson,* 621 P.2d at 1161. The district court's similar reliance on the phrases "negligence of the Defendant" and "acts ... of Magnum Foods" in the verdict forms is far less compelling in light of the following instruction on who may act on behalf of the corporation:

> Linda Rogers, Terry Duckworth, Mark Conover and Bob Bealmer were the employees of the Defendant, Magnum Foods, Inc., in regard to the hiring, retention and supervision of defendant James Martina. Therefore, an act or omission of Linda Rogers, Terry Duckworth, Mark Conover or Bob Bealmer within the scope of their employment at the time was in law the act or omission of the Defendant, Magnum Foods, Inc.

Aplt.App. 298. The court's response to this patent statement of vicarious liability is that "[i]f these employees' acts were the acts of the corporation, then *the corporation* was being found to have acted negligently in violation of its nondelegable duty." Ct.Op. at 1501 n. 1. While this is a true statement, it begs the real question of whether these employees' acts are properly considered to be the acts of the corporation. It is well-settled law that corporations act through their directors and officers or through agents to whom their duties are delegated. *See* Okla. Stat.Ann. tit. 18, §§ 1027, 1028 (West 1986).

It is undisputed that Linda Rogers had neither hiring nor firing authority; thus, since these duties were not "delegated" to her, her omissions in this regard cannot be deemed the corporation's. Yet the instructions *required* the jury to consider Ms. Rogers' actions those of the corporation. The court's reliance on references to "Defendant Magnum Foods, Inc." contained in the instructions, Ct.Op. at 1499–1502, is not persuasive as to culpability when we remember *whose* actions are deemed corporate actions in the jury instructions.

The court's resolution requires that a corporation stand directly liable and uninsurable for punitive damages stemming from the torts of negligent hiring, retention, and supervision, regardless of which employees have actual knowledge of the wrongdoer's behavior and regardless of whether those employees follow a corporation's rules for documenting such behavior. The Oklahoma Supreme Court declined to make such a per se rule in *Dayton Hudson,* 621 P.2d at 1161, and I am compelled to agree. Instead, an examination of the record in light of Oklahoma law shows that the jury may very well have based punitive damages on a vicarious liability theory.

## II. Denial of Judgment as a Matter of Law on the Bad Faith Claim

I also disagree with the court's conclusion that the compensatory damages awarded to Magnum under its bad faith claim may not include uncovered punitive damages. Ct.Op. at 1507. Because I do not agree that Magnum's punitive damages are necessarily uncovered, I, of course, would not have reached this issue. However, given the decision of the court with respect to the coverage of punitive damages predicated on "direct" liability, the better approach would be to simply not recognize any claim based upon a bad faith refusal to settle where policy limits were not exceeded and the only exposure to the insured was for an uncovered event.

While I agree with the court's holding that the existence of a punitive damage claim does not relieve the carrier of its obligation to defend the entire case in good faith, Ct.Op. at 1505–06, I disagree that the reasoning behind *Soto v. State Farm Ins. Co.,* 83 N.Y.2d 718, 613, N.Y.S.2d 352, at 355, 635 N.E.2d 1222, at 1225 (1994) and *Zieman Mfg. Co. v. St. Paul Fire & Marine Ins. Co.,* 724 F.2d 1343, 1345–46 (9th Cir.1983), provides sufficient rationale

for the denial of recovery of punitive damages as part of a bad faith claim.

The court attempts to distinguish the normal "excess" situation from that present here, Ct.Op. at 1504–05, that being the risk of a punitive award, which may or may not be uncovered under Oklahoma law, as a result of refusing to reasonably evaluate and settle a claim. The record is undisputed that the settlement offers made by the victim were reasonable, did not include any punitive damages, and were well within the policy limits, as well as being significantly less than that awarded by the jury.

This court's holding that good faith includes "fair consideration given to Magnum's concerns because of its exposure to the uninsured punitive claim" Ct.Op. at 1506, seems at odds with its prior refusal to include, as compensatory damages, those damages flowing logically and naturally from any bad faith refusal to settle. The court correctly recognizes that the insured cannot "take a gamble that only its insured stands to lose," Ct.Op. at 1504, but then stacks the deck so that the insured must lose. Under the court's reasoning, once the insurance company undertakes to defend the entire claim, as occurred in this situation, there are essentially no recoverable damages for bad faith unless the insured actually pays a portion of the compensatory damages in order to avoid going to trial.

I would hold that where the insurer refuses a reasonable offer, well within policy limits, to settle and this refusal subjects the insured to liability outside the policy coverage, the insurer should be responsible for any losses incurred as a result of its bad faith refusal to settle. I would emphasize that such liability could only be found when the settlement amount demanded of the insurer is reasonable, taking into account the injuries, the covered exposure and the ultimate jury verdict on the covered portion of the claims. In *Zieman*, the Ninth Circuit was dealing with an entirely different situation, apparently framing the question as whether the insurer must settle at *any figure* within policy limits to avoid subjecting its insured to punitive exposure. 724 F.2d at 1345. The answer is obviously no. I believe the New York Court of Appeals decision in *Soto* is simply bad law. The court of appeals recognizes that a damage award against an insurer predicated, in part, upon punitive damages incurred as a result of refusal to settle, is really no different in principle from any other damages that might be found to flow naturally and consequentially from a bad faith refusal to settle. *Soto*, 613 N.Y.S.2d at 354, 635 N.E.2d at 1224. The court, however, simply dismisses consideration of these damages by reason of the State's apparent unwavering public policy precluding indemnification for punitive damages. *Id.* Oklahoma does not have such an absolute prohibition as is clearly evidenced by *Dayton Hudson*.